[No. F049395. Fifth Dist. Jan. 9, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY TODD EASTMAN, JR., Defendant and Appellant.

## COUNSEL

Maureen L. Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Lloyd G. Carter and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**[*]—Defendant Jeffrey Todd Eastman, Jr., entered a negotiated plea of no contest to two counts of committing a lewd or lascivious act upon a child under the age of 14 (Pen. Code, § 288, subd. (a)).[1] The plea agreement called for a 10-year stipulated sentence. At sentencing, Eastman's attorney informed the court Eastman wanted to move to withdraw his plea and requested the court refer the matter for appointment of counsel. The court appointed a second attorney "for the specific grounds of determining [the] motion to withdraw." After investigating the matter, the second attorney concluded there was no legal or factual basis upon which to file a motion to withdraw the plea and informed the court he would not be filing a motion on

---

[*]Gomes, Acting P. J., Hill, J., and Kane, J.

[1] Undesignated section references are to the Penal Code.

Eastman's behalf. Eastman then presented the court with his own handwritten letter requesting the court to allow him to withdraw his plea and stating the grounds for the request. The court declined to rule on Eastman's request and imposed the 10-year stipulated sentence. Eastman filed an appeal, and the trial court issued a certificate of probable cause. (§ 1237.5.)

On appeal, Eastman claims the trial court erred by (1) not holding a *Marsden*[2] hearing before appointing the second attorney to determine whether to file a motion to withdraw his plea and delegating the determination of the merits of such a motion to that attorney and (2) failing to respond to Eastman's *Faretta*[3] motion. As we shall explain, we hold that the failure to conduct a hearing on the *Marsden* motion was error requiring conditional reversal.

## BACKGROUND

At the sentencing hearing held after Eastman entered the negotiated plea, Eastman's attorney, Marc Garcia, informed the court that based on Eastman's plea "his wishes today are to withdraw his plea. My belief is it should be referred to Morse/Pfeiff for appointment of counsel. I've already talked to Bill Davis about this. So it's gonna go to him. I'd ask for three weeks, Your Honor." Eastman asked the court if he could present a letter, which the court received at the hearing. Mr. Garcia stated the letter was written by Eastman's mother.

The letter, which is addressed to the Merced County District Attorney, states that it is a formal complaint against both the deputy district attorney on Eastman's case and Mr. Garcia. The letter explains: "We feel they both have abused their power as officers of the court by threatening and intimidating witnesses for both the prosecution and the defense in the matter of Jeffrey Eastman. We further feel what Mr. Garcia has offered in the way of defense to his client, Mr. Eastman, was a waste of time as well as taxpayer's money." The letter goes on to explain that Eastman's mother was "threatened repeatedly with incarceration if she did not come and testify against her son," and "[i]t is evident there was misconduct between [the district attorney] and Mr. Garcia on behalf of Jeffrey Eastman" in that "they conspired to persuade Mr. Eastman to accept a plea bargain of 10 years in prison, misleading and informing him that his mother was going to testify against him, which was a lie. Only after this hearing did Jeffrey accept the plea offer." The letter closed: "We are hoping to obtain a response to this letter so that Jeffrey Eastman will receive adequate defense and fair treatment in this matter. We trust that you

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*).
[3] *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].

will investigate these charges of misconduct and failure to provide Mr. Eastman with fair and equal treatment as well as a speedy trial (incarcerated almost two years awaiting trial), which is his constitutional right."

The following exchange then occurred:

"THE COURT: Okay. So we're gonna refer this out then for special appointment to determine whether grounds exist—

"MR. GARCIA: This is gonna go to Bill Davis. So if the court wants to put that on the minute order, I've already talked to him about it. There's some technical issues that he has expertise in so I'd rather it go to him.

"THE COURT: We'll appoint Mr. Davis—

"MR. GARCIA: Thank you, Your Honor.

"THE COURT:—for the specific grounds of determining motion to withdraw . . . ."

After the court and counsel set a hearing date, the court stated: ". . . we'll get a determination from Mr. Davis as to whether grounds exist, and conceivably we could go to judgment that same day."

Following eight continuances of the matter, Mr. Davis declared a conflict and requested that he be relieved as counsel on the plea withdrawal, which the court granted. The court referred the matter to the Law Office of Morse, Pfeiff and Garcia for appointment of a contract attorney to consider whether to file a motion to withdraw the plea. The minute order from the next hearing shows that Eastman was represented by J. Tenenbaum, for purpose of withdrawal of the plea, and Mr. Garcia.

At the sentencing hearing ultimately held, the court stated: "Mr. Eastman is here with his attorney, Mr. Garcia, who is here representing Mr. Eastman. And the Court has appointed conflict counsel to look into the matter of whether or not there's a factual or legal basis for withdrawal of the plea, and Mr. Tenenbaum has been appointed for that purpose."

Mr. Tenenbaum informed the court he reviewed the trial file, read the plea transcript, interviewed Mr. Garcia, and talked to the district attorney on the case. Mr. Tenenbaum also said he conferred with Eastman three or four times and had an investigator interview him regarding his problems with the plea. Mr. Tenenbaum stated he would not be filing a motion to withdraw on Eastman's behalf, explaining: "It's clear that [Eastman] was unhappy about

what happened on the day he entered his plea, and I wanted to pin him down on that and explore that a little bit. According to him, he was told one thing, and I asked the other parties about that, Mr. Garcia and [the district attorney], and there's some conflict in what [Eastman] heard. But the long and the short of it is that [Eastman] was in a lengthy meeting with his attorney on the day of trial, and I'm convinced that he was told exactly what the evidence would be against him and was explained, essentially, what was going to happen at his trial. And that was, that was confirmed, because [the district attorney] was also present. Mr. Garcia was able to successfully negotiate a reduction in the disposition, based on their conversations during that meeting, over the course of several hours, from 12 years to 10 years. I don't find anywhere in the record or anywhere in my preparation or looking into this matter that there's a legal or factual basis upon which to file a motion to withdraw the plea. I understand that—I told this to Mr. Eastman last week that that's the direction I was headed and—just as a courtesy to him, because I had pretty much wrapped up my investigation. And I know that he has written a two-page letter to the Court detailing some of his issues, and I think he wants to proceed in pro per. But I've also spoken to his mother, April Eastman—she's also present[] in court—because she was involved in this situation. My reading of this is that it's a little bit of buyer's remorse. There's some focus on collateral issues that may not have been relevant. And I'm not going to be filing a motion on behalf of Mr. Eastman."

Mr. Garcia stated he was "ready to proceed to sentencing today, if that's where the Court is headed. I do think Mr. Eastman has some comments to make to the Court. But as far as my readiness for sentencing today, I'm prepared to proceed." Mr. Garcia waived arraignment for judgment and stated he was not aware of any legal cause why judgment should not be imposed. The court asked Mr. Garcia if he was submitting; Mr. Garcia responded, "I am, I am submitting. But I think—[¶] . . . [¶]—Mr. Eastman—." Without letting Mr. Garcia continue, the court asked the district attorney if she was submitting. She discussed with the court some corrections with respect to the restitution fines and updated custody credits, which Mr. Garcia agreed were correct.

The court asked Eastman what he wished to say. Eastman gave the court a two-page handwritten letter, which Mr. Garcia had not reviewed. The court received and read the letter. In the letter, Eastman asked the court to grant withdrawal of the plea bargain for the following reasons: (1) it was entered into and obtained by dishonesty, as the district attorney and Mr. Garcia had falsely told him Eastman's mother agreed to testify against him; (2) the court improperly denied a continuance before entering the plea so that Eastman could confirm that with his mother; (3) during the two years the case was pending Mr. Garcia did not make any attempt to pursue evidence, or investigate people or information Eastman had provided to him; and (4) on

the day of trial, the district attorney called Eastman's mother and told her if she did not testify against Eastman she would be arrested.

After a discussion between the district attorney and the court on the district attorney's request for the court to make findings in aggravation, the court asked Eastman if he had anything further to say. Eastman responded that he had been fighting this case for two years, he had been through several attorneys, and he had been left in the dark about the whole situation. The following exchange then occurred:

". . . EASTMAN: . . . I'm asking for mercy, at the Court's hand, to either withdraw or to be—

"THE COURT: I've denied the motion to withdraw.

". . . EASTMAN: You have? Oh, you have? Okay.

"THE COURT: Yes.

". . . EASTMAN:—or to have leniency on the behalf of sentencing. Simple fact, I've—there's a lot of things that have changed for me during these two years. I've learned what it is to really be under—

"THE COURT: I don't want to mislead you. I am not going to give you less than the 10 years. That's what you agreed to. That was the agreement that was worked out, so I—so I'll go ahead and allow you to speak, but I don't want you under the impression that the Court's going to reject this plea bargain.

". . . EASTMAN: I don't, I don't understand. What I don't understand, though, is that—why, why I was denied, though. That's just what I don't understand.

"THE COURT: All right. Why the motion to withdraw was denied?

". . . EASTMAN: Yes.

"THE COURT: Because I feel that it was thoroughly investigated by competent counsel, and that counsel has come to the conclusion that there's no factual or legal basis for it. And he's under no obligation to file a motion that he believes there is no factual or legal basis for it. It would be frivolous, and he would be subject to discipline if he did something like that.

". . . EASTMAN: Who?

"THE COURT: The attorney would be. The attorney can't file a frivolous motion to withdraw.

". . . EASTMAN: Wouldn't it be on the basis—I have—

"THE COURT: I'm not going to talk about that motion any longer. I've already ruled on that. [¶] Is there anything else you would like to say about sentencing?

". . . EASTMAN: No, Your Honor.

"THE COURT: All right. Okay. Thank you."

The court then sentenced Eastman to the stipulated sentence of 10 years.

## DISCUSSION

Eastman contends the court erred by failing to hold a *Marsden* hearing when at the initial sentencing hearing his attorney stated he wanted to withdraw his plea and he provided the court with a letter detailing his attorney's alleged misconduct. The People respond that Eastman did not make any statement that could be regarded as a clear and unequivocal request to discharge and replace his attorney. We agree with Eastman.

■ *Marsden* and its progeny require that when a defendant complains about the adequacy of appointed counsel, the trial court permit the defendant to articulate his causes of dissatisfaction and, if any of them suggest ineffective assistance, to conduct an inquiry sufficient to ascertain whether counsel is in fact rendering effective assistance. (*Marsden, supra*, 2 Cal.3d at pp. 123–124; *People v. Crandell* (1988) 46 Cal.3d 833, 854 [251 Cal.Rptr. 227, 760 P.2d 423], abrogated on another point in *People v. Crayton* (2002) 28 Cal.4th 346, 364–365 [121 Cal.Rptr.2d 580, 48 P.3d 1136].) If the defendant states facts sufficient to raise a question about counsel's effectiveness, the court must question counsel as necessary to ascertain their veracity. (*People v. Turner* (1992) 7 Cal.App.4th 1214, 1219 [10 Cal.Rptr.2d 358]; *People v. Penrod* (1980) 112 Cal.App.3d 738, 747 [169 Cal.Rptr. 533].)

Here Eastman submitted a letter to the court which asserted Mr. Garcia had failed to adequately represent his interests. That letter required the court to give Eastman an opportunity to articulate his complaints. The letter on its face stated at least one specific factual complaint about Eastman's appointed attorney: that he was acting in cahoots with the district attorney when they persuaded him to accept the plea bargain by falsely telling him his mother was going to testify against him. Although Eastman did not expressly ask to

have his attorney replaced, the letter did request that Eastman receive an "adequate defense" and his complaints set forth an arguable case that a fundamental breakdown had occurred in the attorney-client relationship that required replacement of counsel. The court was obliged to make a record that this complaint had been adequately aired and considered. (See *People v. Kelley* (1997) 52 Cal.App.4th 568, 579–580 [60 Cal.Rptr.2d 653].) Its failure to do so is error.

■ The People assert that Eastman was not seeking to discharge and replace counsel to provide effective assistance in the future, but instead was asking the court to review the alleged acts or omissions of his counsel to determine whether good cause existed for him to withdraw his plea. As Eastman points out, however, a *Marsden* motion is by necessity both forward and backward looking, as explained by our Supreme Court: "It is the very nature of a *Marsden* motion, at *whatever* stage it is made, that the trial court must determine whether counsel has been providing competent representation. Whenever the motion is made, the inquiry is forward-looking in the sense that counsel would be substituted in order to provide effective assistance in the *future*. But the decision must always be based on what has happened in the *past*. The further one is in the process, the more counsel has done in the past that can be challenged, but that is a difference of degree, not kind." (*People v. Smith* (1993) 6 Cal.4th 684, 694–695 [25 Cal.Rptr.2d 122, 863 P.2d 192].)

■ As our Supreme Court further explained, "the trial court should appoint substitute counsel when a proper showing has been made at any stage. A defendant is entitled to competent representation at all times, including presentation of a new trial motion or motion to withdraw a plea." (*People v. Smith, supra,* 6 Cal.4th at p. 695.) Whether a request for substitute counsel is made before or after conviction, "[t]he court must allow the defendant to express any specific complaints about the attorney and the attorney to respond accordingly." (*Id.* at p. 694.) The trial court denied Eastman that opportunity in this case.

Although the court appointed a second attorney to investigate whether grounds existed upon which to bring a motion to withdraw the plea, we see no basis upon which the court could discharge its duties under *Marsden* by doing so. Assuming the court could properly delegate its duty to inquire into the sources of Eastman's dissatisfaction, it was still obligated to *make a record* sufficient to show the nature of Eastman's grievances and the court's response to them. While Mr. Tenenbaum reported his findings to the court, he did not detail what he found, but instead offered his own conclusions regarding the merits of Eastman's claims. No part of this procedure satisfied the requirements of *Marsden.* Here, the court in effect discharged its *Marsden*

obligation by appointing an independent attorney to investigate Eastman's complaints about his attorney, and that attorney opined that the first had rendered effective assistance; the court simply adopted that opinion without ever putting Eastman's complaints, or the basis for their rejection, on the record.

■ The People do not suggest the error can be deemed harmless. The error is reversible unless the record shows beyond a reasonable doubt that the error did not prejudice defendant. (*Marsden, supra*, 2 Cal.3d at p. 126, citing *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].) Because we do not know what Eastman might have shown had he received a full hearing on his *Marsden* motion, we cannot say the error was harmless. This is especially true in light of Eastman's claim that his plea was procured through the intimidation of his mother and misrepresentations defense counsel and the district attorney made to him, which presented a colorable basis for withdrawal of his plea. Good cause to withdraw a plea is shown if the defendant did not exercise free judgment in entering into the plea. (*People v. Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250].) "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea. [Citations.]" (*Ibid.*) Pleas may be set aside if the defendants are unduly influenced to accept a plea because their counsel is not prepared to proceed. (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1142 [100 Cal.Rptr.2d 265].) A plea also may be withdrawn if the plea was entered into as a result of what can be characterized as fraud or duress. (§ 1018; *People v. Cruz, supra*, 12 Cal.3d at p. 566; *People v. Dena* (1972) 25 Cal.App.3d 1001, 1008 [102 Cal.Rptr. 357].)

We note that to the extent the court appointed Mr. Tenenbaum to determine for the court whether there was a legal or factual basis for withdrawal of the plea, the court cannot abandon its own constitutional and statutory obligations to make the ultimate determination itself based upon the relevant facts and law of which the court is made aware by some legally sanctioned procedure. (Cal. Const., art. 6, § 1 [the judicial power of the state is vested in the courts]; Code Civ. Proc., § 170 [a judge has a duty to decide any proceeding in which he or she is not disqualified]; *People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 721 [107 Cal.Rptr.2d 323, 23 P.3d 563] [powers of nonjudicial officers are constitutionally limited; findings and recommendations of such officers must be independently reviewed by the court and are not binding until adopted by the court]; *Hosford v. Henry* (1951) 107 Cal.App.2d 765, 772 [238 P.2d 91] [a court cannot delegate its own factfinding powers].)

Apparently the court appointed Mr. Tenenbaum to simultaneously represent Eastman, with Mr. Garcia remaining his counsel of record for purposes other than the motion to withdraw his plea. As both parties point out, our Supreme

Court criticized this procedure in *People v. Smith, supra*, 6 Cal.4th 684, when it stated that appointment of counsel for the purpose of arguing previous counsel was incompetent, without an adequate showing by the defendant, can have undesirable consequences. (*Id.* at p. 695.)

As the court explained: "In *People v. Makabali* (1993) 14 Cal.App.4th 847 [18 Cal.Rptr.2d 72], the trial court appointed second counsel to investigate a possible motion to withdraw a guilty plea on the basis of ineffective assistance of counsel. New counsel did not make the motion. On appeal, appointed appellate counsel, i.e., the *third* attorney, claimed (unsuccessfully) that the *second* was incompetent for not claiming the *first* was incompetent. The spectacle of a series of attorneys appointed at public expense whose sole job, or at least a major portion of whose job, is to claim the previous attorney was, or previous attorneys were, incompetent discredits the legal profession and judicial system, often with little benefit in protecting a defendant's legitimate interests. [¶] We note also that in *People v. Makabali* . . . the original attorney was apparently not relieved of further representation of the defendant. He represented the defendant at sentencing, after the second attorney did not move to withdraw the plea. (*Id.* at p. 850.) We are unaware of any authority supporting the appointment of simultaneous and independent, but potentially rival, attorneys to represent defendant. When a *Marsden* motion is granted, new counsel is substituted for all purposes in place of the original attorney, who is then relieved of further representation. If the *Marsden* motion is denied, at whatever stage of the proceeding, the defendant is not entitled to another attorney who would act in effect as a watchdog over the first. [¶] We stress, therefore, that the trial court should appoint substitute counsel when a proper showing has been made at any stage. A defendant is entitled to competent representation at all times, including presentation of a new trial motion or motion to withdraw a plea. . . . [W]hen a defendant satisfies the trial court that adequate grounds exist, substitute counsel should be appointed. Substitute counsel could then investigate a possible motion to withdraw the plea or a motion for new trial based upon alleged ineffective assistance of counsel. Whether, after such appointment, any particular motion should actually be made will, of course, be determined by the new attorney." (*People v. Smith, supra*, 6 Cal.4th at pp. 695–696.)

We do not decide whether in all cases the procedure approved in *People v. Makabali* has survived the Supreme Court's criticism of it in *People v. Smith*. We decide only that in this case, Eastman claimed his motion to withdraw was based on inadequate representation by his appointed counsel and stated facts that could constitute good cause to withdraw his plea. On this record, the court erred in not holding a *Marsden* hearing and instead appointing a second attorney to investigate Eastman's claims.

## DISPOSITION

The judgment is reversed and the matter remanded with the following directions: (1) the court shall hold a hearing on Eastman's *Marsden* motion concerning Mr. Garcia; (2) if Eastman makes a prima facie showing of ineffective assistance of counsel, the court shall appoint new counsel to assist him for this purpose and shall entertain such applications as newly appointed counsel may make; and (3) if newly appointed counsel does not make any motions, any motions made are denied, or Eastman's *Marsden* motion is denied, the court shall reinstate the judgment.