Filed 12/5/11

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S188453 |
| v. | ) | |
| | ) | Ct.App. 5 F057147 |
| LUIS OSCAR SANCHEZ, | ) | |
| | ) | Tulare County |
| Defendant and Appellant. | ) | Super. Ct. No. PCF204260A, |
| | ) | VCF166696A, |
| | ) | and VCF180279 |

In this case we consider under what circumstances a trial court is obligated to conduct a hearing on whether to discharge counsel and appoint new counsel when a criminal defendant indicates a desire to withdraw a guilty or no contest plea on the ground that current counsel has provided ineffective assistance.  (See *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).)  We conclude a trial court must conduct such a *Marsden* hearing only when there is at least some clear indication by the defendant, either personally or through counsel, that defendant wants a substitute attorney.  We additionally hold that, if a defendant requests substitute counsel and makes a showing during a *Marsden* hearing that the right to counsel has been substantially impaired, substitute counsel must be appointed as attorney of record for all purposes.  In so holding, we specifically disapprove of the procedure of appointing substitute or "conflict" counsel solely to evaluate a defendant's complaint that his attorney acted incompetently with respect to advice regarding the entry of a guilty or no contest plea.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

On May 10, 2008,[1] Lindsay police officers responded to a house to investigate a 911 hang-up call and were told by defendant Luis Oscar Sanchez that he had dialed 911 accidentally.  The officers searched the house to ensure that no one there needed assistance.  Detecting a strong odor of marijuana in one room, the officers looked in that room's closet and discovered four marijuana plants growing inside.[2]  Defendant was arrested and charged with cultivation of marijuana (Health & Saf. Code, § 11358), in case No. PCF204260A.  The complaint in that case also alleged that defendant came within the "Two Strikes" law as a result of a prior attempted first degree murder.  (Pen. Code, §§ 459, 1170.12, subds. (a)-(d), 667, subds. (b)-(i).)

On October 28, defendant appeared in the trial court represented by Deputy Public Defender Nathan Leedy. Pursuant to a plea bargain that promised him a stipulated term of "32 months in state prison," defendant pleaded guilty to cultivation of marijuana, and admitted having suffered a prior conviction and having violated probation in two other cases. Before entering his plea, defendant told the trial court that he had given his attorney all the information he had about his case, he was advised of his possible defenses, and that he was satisfied with his attorney's advice.  Leedy informed the trial court he had thoroughly discussed with defendant his rights, defenses and possible consequences of his plea, and that, in Leedy's judgment, defendant understood his rights.  Leedy added that, while he personally did not agree with defendant's decision to change his plea to guilty, he

---

[1]    All subsequent dates refer to the year 2008 unless otherwise noted.
[2]    The statement of facts is taken from the probation report filed in case No. PCF204260A.  The facts underlying defendant's two other cases are not relevant to the issue before us.

2

agreed with everything defendant and the court had stated on the record regarding the required advisements.

On December 2, the initial date set for sentencing, Deputy Public Defender Tony Dell'Anno told the trial court that defendant "wishe[d] to have the Public Defender explore having his plea withdrawn." The trial court then asked, "Is this something that you can do or do I need to appoint conflict counsel?" Dell'Anno responded by saying it was his understanding that "conflict counsel cannot be appointed until a *Marsden*[] [hearing is] held where the Court would find that [the public defender's office] did not give competent advice before [declaring a] conflict." Dell'Anno then stated his belief that "at this point [the public defender's office] need[s] to check out any issues for possible withdrawal ourselves." The court agreed to give Dell'Anno a week "to let me know whether or not conflict counsel needs to be appointed . . . or [whether] you need to file a motion on his behalf as his representative."

At the December 9 hearing, a different public defender, Kimberly Barnett, appeared and indicated that defendant was present and that conflict counsel needed to be appointed. The trial court responded, "We had discussed you were looking into conflict [counsel] needing to be appointed if you wanted to do a motion to withdraw his plea. Your assessment is that it's necessary, so what I am going to do is . . . appoint conflict counsel for the sole purpose of looking into the motion to withdraw his plea."

After defendant waived time for his sentencing to give the newly appointed attorney time to explore why defendant wanted to withdraw his plea, the trial court set December 30 for a hearing on the motion. The court then told defendant, "In the interim I have appointed conflict counsel and they will contact you. When they contact you, you give them all the reasons why you think you should be able to withdraw your plea. They will give you some advice about that."

3

On December 30, defendant appeared in the trial court with both Wes Hamilton, the private attorney appointed to look into the motion to withdraw defendant's plea, and Deputy Public Defender Leedy. Hamilton told the court that defendant "wants a trial on his case," that he is "adamant he wants to withdraw his plea but I don't [find] a legal basis" for him to do so. Next, speaking directly to Deputy Public Defender Leedy, the court said, "All right, [defendant] is on for sentencing so it goes back to you representing him." The trial court then continued the matter for sentencing at Leedy's request.

At the January 2, 2009 sentencing hearing, Deputy Public Defender Leedy appeared with defendant. When asked by the trial court whether there is "any legal cause why sentencing cannot take place," Leedy told the court that defendant "is still in the position that he would like to withdraw his plea," but added, "I understand he's had conflict counsel appointed to evaluate that." In response, the court noted that Attorney Hamilton did "an evaluation" and did not find "any basis or grounds for plea withdrawal." The trial court then sentenced defendant to the agreed-upon term of 32 months.

The Court of Appeal held "the trial court's duty to conduct a *Marsden* hearing was triggered by defense counsel's request for appointment of substitute counsel to investigate the filing of a motion to withdraw [the] plea on [defendant's] behalf" based on "alleged incompetence of counsel." It also concluded the trial court erred "by appointing substitute counsel without a proper showing and by reappointing the public defender's office to represent [defendant] after substitute counsel announced his conclusion that there was no basis for filing a motion to withdraw [the] plea on [defendant's] behalf." The Court of Appeal emphasized that "[t]he proper procedure does not include the appointment of 'conflict' or 'substitute' counsel to investigate or evaluate the defendant's proposed new trial or plea withdrawal motion." It reversed the judgment and

4

remanded the matter with directions concerning how the trial court should conduct a hearing on defendant's *Marsden* motion concerning his representation by the public defender's office.

We granted the Attorney General's petition for review.

## II. DISCUSSION

In California, the "seminal case regarding the appointment of substitute counsel is *Marsden*, *supra*, 2 Cal.3d 118, which gave birth to the term of art, a '*Marsden* motion.' " (*People v. Smith* (1993) 6 Cal.4th 684, 690 (*Smith*).)

In *Marsden,* the defendant contended he was "deprived of his constitutional right to the effective assistance of counsel because the trial court denied his motion to substitute new counsel without giving him an opportunity to state the reasons for his request." (*Marsden*, *supra*, 2 Cal.3d at p. 120.) The defendant told the trial court he did not believe he was " 'getting adequately represented or competently represented' " during his jury trial, and he expressed his belief that the " 'court's transcript prior to this meeting here can reveal that fact.' " (*Id*. at p. 121.) Accordingly, the defendant asked to make a motion for substitution of " 'proper counsel.' " (*Ibid*.) In evaluating the motion to substitute counsel, the trial court refused the defendant's request to " 'bring up some specific instances' " of ineffective assistance. (*Id*. at p. 122.)

We recognized that "criminal defendants are entitled under the Constitution to the assistance of court-appointed counsel if they are unable to employ private counsel." (*Marsden*, *supra*, 2 Cal.3d at p. 123, citing *Gideon v. Wainwright* (1963) 372 U.S. 335.) We explained that "the decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court," that "a defendant has no absolute right to more than one appointed attorney," and that a trial court is not bound to accede to a request for substitute counsel unless the defendant makes a

5

" ' "sufficient showing . . . that the right to the assistance of counsel would be substantially impaired" ' " if the original attorney continued to represent the defendant. (*Marsden*, at p. 123.)

In holding the defendant was denied a fair trial because he was not given the opportunity to tell the trial judge the reasons underlying his belief that his appointed attorney was providing ineffective assistance of counsel, we noted that "although defendant was represented by counsel, he was groping for the proper manner in which to demonstrate the alleged lack of competence of his attorney," and that the judge was only being called upon "to listen to defendant's reasons for requesting different counsel." (*Marsden*, *supra*, 2 Cal.3d at p. 126.)

In *Marsden*, we held it was error to deny the defendant the opportunity to explain the basis for his claim because a trial court that "denies a motion for substitution of attorneys solely on the basis of [its] courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of [its] discretion to determine the competency of the attorney." (*Marsden*, *supra*, 2 Cal.3d at p. 124.) We found the error prejudicial in *Marsden* because, in that case, we could not "conclude beyond a reasonable doubt that this denial of the effective assistance of counsel did not contribute to the defendant's conviction." (*Id*. at p. 126.)

In *People v. Lucky* (1988) 45 Cal.3d 259 (*Lucky*), the defendant contended the trial court erred by continuing trial proceedings "without giving him the opportunity to state the specific reasons for his 'conflict' with appointed counsel. Specifically he contend[ed] that when appointed counsel . . . informed the court that defendant was considering the idea of retaining private counsel in lieu of [his appointed counsel], the court had a duty under . . . *Marsden* . . . to give defendant an opportunity to state fully the grounds for his dissatisfaction with appointed counsel." (*Id*. at p. 280.) We held "a trial court's duty to permit a defendant to

6

state his reasons for dissatisfaction with his attorney arises *when the defendant in some manner moves to discharge his current counsel*." (*Id*. at p. 281, italics added.) By footnote, we explained that "[w]e do not necessarily require a proper and formal legal motion, but at least some clear indication by defendant that he wants a substitute attorney." (*Ibid*., fn. 8.) In *Lucky*, we found nothing in the record that revealed such an indication by the defendant. (*Id*. at p. 283.)

In *Smith*, *supra*, 6 Cal.4th 684, this court held that when a defendant requests substitute counsel, "the standard expressed in *Marsden* and its progeny applies equally preconviction and postconviction. . . . A defendant has no greater right to substitute counsel at the later stage than the earlier." (*Id*. at p. 694.) We explained: "It is the very nature of a *Marsden* motion, at *whatever* stage it is made, that the trial court must determine whether counsel has been providing competent representation. Whenever the motion is made, the inquiry is forward-looking in the sense that counsel would be substituted in order to provide effective assistance in the *future*. But the decision must always be based on what has happened in the *past*. The further one is in the process, the more counsel has done in the past that can be challenged, but that is a difference of degree, not kind." (*Id*. at pp. 694-695.)

In *Smith*, we noted that "[a]ppointment of counsel for the purpose of arguing that previous counsel was incompetent, *without an adequate showing by defendant*, can have undesirable consequences." (*Smith*, *supra*, 6 Cal.4th at p. 695, italics added.) As an example of such undesirable consequences, we cited *People v. Makabali* (1993) 14 Cal.App.4th 847. We noted that, in *Makabali*, the "the trial court appointed second counsel to investigate a possible motion to withdraw a guilty plea on the basis of ineffective assistance of counsel. New counsel did not make the motion. On appeal, appointed appellate counsel, i.e., the *third* attorney, claimed (unsuccessfully) that the *second* was incompetent for not

7

claiming the *first* was incompetent." (*Smith*, at p. 695.) Thereafter, the original attorney in *Makabali,* who was "apparently not relieved of further representation of the defendant[,] . . . represented the defendant at sentencing, after the second attorney did not move to withdraw the plea." (*Smith*, at p. 695.) In *Smith*, we criticized the appointment of a "series of attorneys . . . at public expense whose sole job, or at least a major portion of whose job, is to claim the previous attorney was, or previous attorneys were, incompetent" and found no "authority supporting the appointment of simultaneous and independent, but potentially rival, attorneys to represent defendant." (*Ibid.*)

We concluded that "[w]hen a *Marsden* motion is granted, new counsel is substituted for all purposes in place of the original attorney, who is then relieved of further representation. If the *Marsden* motion is denied, at whatever stage of the proceeding, the defendant is not entitled to another attorney who would act in effect as a watchdog over the first. [¶] We stress, therefore, that the trial court should appoint substitute counsel when a proper showing has been made at any stage. . . . [W]hen a defendant satisfies the trial court that adequate grounds exist, substitute counsel should be appointed. Substitute counsel could then investigate a possible motion to withdraw the plea or a motion for new trial based upon alleged ineffective assistance of counsel. Whether, after such appointment, any particular motion should actually be made will, of course, be determined by the new attorney." (*Smith*, *supra*, 6 Cal.4th at pp. 695-696.)

In *Smith*, we noted that "it is difficult for counsel to argue his or her own incompetence" (*Smith*, *supra*, 6 Cal.4th at p. 694), but we neither suggested it is impossible for counsel to do so nor that a trial court should presume a defendant is requesting substitute counsel without at least some indication that he or she wants to be represented by counsel other than the current appointed attorney.

Instead, our holding was that "substitute counsel should be appointed when . . . necessary under the *Marsden* standard, that is whenever, in the exercise of its discretion, the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel (*People v. Webster* [(1991)] 54 Cal.3d [411,] 435), or, stated slightly differently, if the record shows that the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result (*People v. Crandell* [(1988)] 46 Cal.3d [833,] 854)." (*Smith*, *supra*, 6 Cal.4th at p. 696.)

As the Court of Appeal in the present case appropriately noted, "[d]efense counsel, like the trial courts, should abandon their reliance on counsel specially appointed to do the trial court's job of evaluating the defendant's assertions of incompetence of counsel and deciding the defendant's new trial or plea withdrawal motion. (See [*People v.*] *Eastman* [(2007)] 146 Cal.App.4th [668,] 697 ['the court cannot abandon its own constitutional and statutory obligations to make the ultimate determination itself based upon the relevant facts and law of which the court is made aware by some legally sanctioned procedure'].)" The Court of Appeal aptly concluded that "[t]he proper procedure does not include the appointment of 'conflict' or 'substitute' counsel to investigate or evaluate the defendant's proposed new trial or plea withdrawal motion."

We conclude that a trial court is obligated to conduct a *Marsden* hearing on whether to discharge counsel for all purposes and appoint new counsel when a criminal defendant indicates after conviction a desire to withdraw his plea on the ground that his current counsel provided ineffective assistance only when there is "at least some clear indication by defendant," either personally or through his current counsel, that defendant "wants a substitute attorney." (*Lucky*, *supra*, 45

9

Cal.3d at p. 281, fn. 8.) We additionally hold that, at any time during criminal proceedings, if a defendant requests substitute counsel, the trial court is obligated, pursuant to our holding in *Marsden*, to give the defendant an opportunity to state any grounds for dissatisfaction with the current appointed attorney. (*Marsden*, *supra*, 2 Cal.3d at p. 126.)[3] In turn, if the defendant makes a showing during a *Marsden* hearing that his right to counsel has been "substantially impaired" (*Marsden*, *supra*, 2 Cal.3d at p. 123), substitute counsel must be appointed as attorney of record for all purposes. (*Smith*, *supra*, 6 Cal.4th at pp. 695-696.) In so holding, we specifically disapprove of the procedure adopted by the trial court in this case, namely, the appointment of a substitute or "conflict" attorney solely to evaluate whether a criminal defendant has a legal ground on which to move to withdraw the plea on the basis of the current counsel's incompetence.

The People cite *People v. Dickey* (2005) 35 Cal.4th 884 (*Dickey*), in support of their claim that a trial court may, in its discretion, "appoint additional, special counsel for the limited purpose of exploring the prospect of moving to set aside the conviction on a theory the conviction resulted from ineffective assistance of counsel," and that "[i]f special counsel makes no motion, or if a motion is made

---

**3** The Court of Appeal therefore correctly concluded that "the trial court's duty to conduct a *Marsden* hearing was triggered by defense counsel's request for appointment of substitute counsel to investigate the filing of a motion to withdraw [the] plea on Sanchez's behalf." However, the Fifth District Court of Appeal, in the present case and in its earlier cases, *People v. Eastman* (2007) 146 Cal.App.4th 688, *People v. Mejia* (2008) 159 Cal.App.4th 1081, and *People v. Mendez* (2008) 161 Cal.App.4th 1362, incorrectly implied that a *Marsden* motion can be triggered with something less than a clear indication by a defendant, either personally or through current counsel, that the defendant "wants a substitute attorney." (*Lucky*, *supra*, 45 Cal.3d at p. 281, fn. 8.) Nonetheless, we shall affirm the judgment of the Court of Appeal because we agree with its disposition of defendant Sanchez's case.

10

but denied, special counsel's duties end, and proceedings continue with defendant represented by original counsel." *Dickey* does not stand for that proposition.

In *Dickey*, the defendant contended that "following the guilt phase of the trial, he sought to make a motion for the appointment of different counsel to assist him in the penalty phase, and the court, without conducting the hearing required by *Marsden*, prejudicially erred by declining to rule on his motion until the penalty phase was concluded." (*Dickey*, *supra*, 35 Cal.4th at p. 918.)

This court concluded the defendant in *Dickey* mischaracterized his trial motion as a motion for substitute counsel during the penalty phase. We agreed with the Attorney General that the defendant instead had moved "for the appointment of *separate* counsel for the purposes of preparing a *motion for a new trial* based on, among other grounds, incompetence of counsel during the guilt phase." (*Dickey*, *supra*, 35 Cal.4th at p. 918.) The trial court explained to the defendant that a motion for new trial is appropriate before sentencing, and, at the completion of the penalty phase, the court did appoint separate counsel to assist the defendant in the preparation of a motion for new trial. That motion was filed, and it was based in part on the ground that the defendant's trial counsel was ineffective during the guilt phase and that the trial court had erred by failing to conduct a *Marsden* hearing following the guilt phase. (*Id*. at p. 920**.**) In denying the motion, the trial court clarified that it was aware a *Marsden* motion may be made and heard " 'at any stage of the proceedings,' " but then held " 'there was no reason to have a *Marsden* hearing at the time. It was not asked for.' " (*Ibid*.)

In concluding the trial court did not commit *Marsden* error, we reiterated that " ' "[a]lthough no formal motion is necessary, there must be 'at least some clear indication by defendant that he wants a substitute attorney.' " [Citations.]' [Citation.]" (*Dickey*, *supra*, 35 Cal.4th at p. 920.) In *Dickey*, the defendant "did *not* clearly indicate he wanted substitute counsel appointed for the penalty phase.

11

To the extent he made his wishes known, he wanted to use counsel's assertedly incompetent performance in the guilt phase as one of the bases of a motion for new trial, and he wanted to have separate counsel appointed to represent him in the preparation of such a motion.  As his expressed wishes were honored, he has no grounds for complaint now."  (*Id*. at pp. 920-921.)

*Dickey* is distinguishable from the instant case.  The defendant in *Dickey* expressed the desire to have a substitute counsel represent him at a future proceeding, namely, an anticipated motion for new trial, that would not take place until the completion of the penalty phase.  The defendant in *Dickey* voiced no objection to having his current attorney represent him at the penalty phase and, unlike the present case, did not seek to discharge his current attorney.  Having concluded that the defendant in *Dickey* did not make a motion for substitute counsel to represent him in the penalty phase, we characterized the trial court's references to *Marsden* as "confused and confusing."  (*Dickey*, *supra*, 35 Cal.4th at p. 918.)  Here, by contrast, defendant, through counsel, requested that a "conflict" or substitute attorney be appointed immediately, and the obvious implicit ground for that request was the incompetency of defendant's currently appointed counsel.

The People also rely on our recent decision in *People v. Clark* (2011) 52 Cal.4th 856 (*Clark*).  In *Clark*, the trial court conducted several pretrial *Marsden* hearings, each time listening to the defendant's complaints about his lead attorney and to her responses, and then denied the motions.  The trial court previously had denied the defendant's request to have appointed independent counsel to assist him in discharging his attorneys, but it then reversed itself during a midtrial *Marsden* motion and agreed to appoint "independent counsel" to represent defendant at his latest *Marsden* hearing.  (*Id*. at p. 914.)  We held that although we have warned that such appointments may cause delay and may damage the attorney-client relationship, the trial court did not abuse its discretion under the

12

circumstances of that case. (*Id*. at p. 917.) *Clark* provides no guidance on the issue presented here because the procedural context is entirely different. In *Clark*, the trial court, after conducting several *Marsden* hearings, appointed independent counsel to assist defendant with his *Marsden* motion "just to make sure every possible point will be brought forth that legally can be brought forth." (*Ibid*.) In the present case, the trial court appointed substitute counsel to represent defendant on a motion to withdraw his plea in lieu of conducting a *Marsden* hearing — in effect, granting the defendant's *Marsden* motion without conducting the required hearing.

In the present case, we agree with the Court of Appeal that the trial court erred by failing to hold a hearing on defendant's informal *Marsden* motion concerning his representation by the public defender's office, by appointing substitute counsel without a sufficient showing that failure to appoint substitute counsel would substantially impair or deny defendant's right to assistance of counsel, and by appointing substitute counsel for the limited purpose of evaluating defendant's reasons for wanting to withdraw his plea rather than appointing substitute counsel for all purposes.

As noted above, we held in *Marsden* that it was prejudicial error to deny the defendant the opportunity to explain the basis for his claim because a trial court that "denies a motion for substitution of attorneys solely on the basis of [its] courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of [its] discretion to determine the competency of the attorney" (*Marsden*, *supra*, 2 Cal.3d at p. 124), and, in that case, we could not "conclude beyond a reasonable doubt that this denial of the effective assistance of counsel did not contribute to the defendant's conviction." (*Id*. at p. 126.)

In the present case, the Court of Appeal reversed the judgment of the trial court and remanded the matter to that court with the following directions: "(1)

13

the court shall hold a hearing on [defendant]'s *Marsden* motion concerning his representation by the public defender's office; (2) if the court finds that [defendant] has shown that a failure to replace his appointed attorney would substantially impair his right to assistance of counsel, the court shall appoint new counsel to represent him and shall entertain such applications as newly appointed counsel may make; and (3) if newly appointed counsel makes no motions, any motions made are denied, or [defendant]'s *Marsden* motion is denied, the court shall reinstate the judgment." We believe this is the proper disposition.

## III.  DISPOSITION

We affirm the judgment of the Court of Appeal.


CHIN, J.


WE CONCUR:

CANTIL-SAKAUYE, C. J.
KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CORRIGAN, J.
LIU, J.

14

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Sanchez

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 189 Cal.App.4th 374
**Rehearing Granted**

_____

**Opinion No.** S188453
**Date Filed:** December 5, 2011

_____

**Court:** Superior
**County:** Tulare
**Judge:** Juliet L. Boccone

_____

**Counsel:**

Diane Nichols, under appointment by the Supreme Court, and Eleanor M. Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Brian G. Smiley, David Andrew Eldridge and Jamie A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Diane Nichols
P.O. box 2194
Grass Valley, CA  95945
(530) 477-8448

David Andrew Eldridge
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 324-6291