Filed 02/27/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G051606 |
| v. | (Super. Ct. No. 13NF3826) |
| MICHAEL JAMES JACKSON, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James E. Rogan and Scott A. Steiner, Judges. Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

The trial judge in this case exercised uncommon common sense in a ruling that guaranteed defendant would not have to face the beggar's crossroad of having to choose between revealing damaging information to the judge about to hear his bench trial or giving up his chance at a new attorney. This sagacity is assigned to us as error.

Appellant Michael James Jackson was convicted of multiple counts of sexual misconduct arising from his work as a massage therapist. His sole claim on appeal is that the trial judge erred in transferring his motion for a new attorney – commonly known as a *Marsden* motion (see *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*)) – to another judge for adjudication. Although *Marsden* motions generally should be heard by the judge who is assigned to the defendant's case, the transfer here was justified because at the time appellant made his motion, he was facing a bench trial in front of the very judge to whom he would have addressed his complaints. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged with committing sex crimes against four different women to whom he provided massage services. He was also charged with one count of possessing child pornography. The trial judge, James E. Rogan, granted appellant's motion to sever the pornography charge, and appellant waived his right to a jury trial on that charge. Then, while that charge was awaiting resolution, Judge Rogan conducted appellant's jury trial on the remaining charges.

At the jury trial, appellant's clients Tina M., Erica V., and Lisa R. testified appellant touched and/or digitally penetrated their vaginas while massaging them. Although all three women objected to this conduct, appellant assured them he was doing it for therapeutic purposes, i.e., to break up scar tissue or "work out knots" in their genitalia. The evidence also indicated appellant had sexual intercourse with Antoinette Y. against her will during the course of a massage.

Testifying on his own behalf, appellant denied touching Erica or Lisa inappropriately. He admitted touching Tina's vagina and having sexual intercourse with

2

Antoinette but claimed those actions were consensual. The jury acquitted appellant of raping Antoinette. As to the other three victims, however, it found appellant guilty of five counts of sexual penetration by fraud, one count of sexual battery by fraud and three counts of simple battery. (Pen. Code, §§ 289, subd. (d)(4); 243.4, subd. (c); 242.)[1]

Following the verdict, appellant made a *Marsden* motion to replace his public defender, Justin Glenn. At the time of the motion, the bench trial on the remaining charge involving child pornography was still pending before Judge Rogan. In light of that pending charge, Glenn requested the motion be heard by another judge. The basis for Glenn's transfer request was that he did not want Judge Rogan to hear any evidentiary matters related to the outstanding count. Judge Rogan granted the request and transferred the motion to Judge Scott A. Steiner for hearing and resolution.[2]

Judge Steiner took up the motion that very day. At the outset, he informed appellant, "Judge Rogan has asked me to hear this *Marsden* hearing so you can feel free to speak freely with me about your concerns without any concern that it might come back to haunt you at some later stage in these proceedings[.]" Appellant was not happy with this arrangement. He said he wanted Judge Rogan to hear the motion "because the moral turpitude and dishonesty was done in his court." However, Judge Steiner told him he did not have any choice in the matter and proceeded with the hearing.

Appellant voiced multiple complaints against Glenn during the hearing. First he faulted Glenn for failing to impeach Tina and Erica more vigorously. Appellant asserted Tina was susceptible to additional impeachment because she made fraudulent representations in applying for a personal line of credit. And as to Erica, appellant claimed she filed a false consumer complaint against him online and then told him she

---

[1] The simple battery offenses were offered as lesser included offenses to charges of aggravated sexual penetration.

[2] Judge Rogan made this ruling after conferring with counsel in chambers. Although this chambers conference was not reported, we granted respondent's motion to augment the appellate record with a settled statement of the proceedings.

would not retract the complaint unless he paid her $10,000. According to appellant, he alerted Glenn to these issues, but Glenn never raised them at trial.

Appellant also criticized Glenn for neglecting to challenge the accuracy of certain information the police presented in seeking a protective order for Tina before trial. The police alleged appellant had confessed to digitally penetrating Tina during a covert phone call, but appellant claimed he never confessed to anything during the call. He was frustrated Glenn never brought this up during the trial.

Appellant was also upset about a discussion he had with Glenn during a break in his direct examination. During the break, Glenn told him to keep his answers short and just answer the specific questions that were being posed to him. Appellant knew he had been "spinning off a little bit" in his testimony, but he resented Glenn's advice because he felt his testimony was his only opportunity to explain himself to the jury.

In addition to the foregoing, appellant accused Glenn in general terms of "dishonesty" and "misleading the court." Appellant also claimed Glenn was remiss for "not properly investigating and bringing in witnesses" to help his case and by refusing to let him correct and explain the various "lies" that were told by the prosecution's witnesses.

In responding to appellant's allegations, Glenn told the court he has handled close to 200 trials in his nine years as a public defender. He said he did attempt to raise the issue of Tina's fraudulent credit application at trial, but the trial court precluded him from doing so. Glenn stated he also investigated appellant's claim about Erica's alleged blackmail scheme. However, he was unable to corroborate the claim, so he never broached the issue at trial.

As for the allegation regarding appellant's false confession, Glenn explained that appellant did actually admit to digitally penetrating Tina during the covert

4

phone call. Although there was some ambiguity as to whether appellant claimed the penetration was consensual, the underlying conduct was never really in doubt.

Lastly, Glenn did not dispute that when he spoke to appellant during a break in his direct examination, he was quite forceful in terms of directing appellant to shorten his answers to his questions. Glenn said this was imperative because appellant had been giving meandering, irrelevant answers that opened the door to extensive cross-examination. Glenn was also concerned appellant's answers were coming off as a crass attempt to ingratiate himself with the jury, which fit the prosecution's characterization of him as being manipulative in nature.

In ruling on the matter, Judge Steiner credited Glenn's explanations and found no basis to remove him from the case. He therefore denied appellant's *Marsden* motion and sent the matter back to Judge Rogan. Judge Rogan then conducted a bench trial on the sole remaining charge and found appellant guilty of possessing child pornography. At sentencing, appellant appeared with retained counsel, who stated he could not find any grounds for filing a motion for a new trial. Thereupon, Judge Rogan sentenced appellant to 15 years in prison.

DISCUSSION

Recognizing he was fully allowed to air his grievances against his attorney, appellant makes no complaints about the manner in which Judge Steiner handled his *Marsden* hearing. However, he contends Judge Steiner was the wrong person to hear his motion and that Judge Rogan erred as a matter of law by transferring the matter to him. Appellant asserts the transfer violated his right to effective assistance of counsel and due process of law. We don't see it that way. We think it protected those rights.

"Trial courts operate according to norms that confer substantial discretion in the conduct of judicial business. [Citation.]" (*People v. Rodriguez* (2016) 1 Cal.5th 676, 682.) In fact, "'It is . . . well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control

5

litigation before them.'" (*Ibid.*, quoting *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967.) That doesn't mean Judge Rogan had carte blanche to transfer appellant's *Marsden* motion to another judge, but we must keep in mind that trial courts generally have substantial leeway when it comes to "distribut[ing] business within their courts[.]" (*Id.* at p. 679.)

Furthermore, in assessing the propriety of Judge Rogan's decision, it also makes sense for us to revisit the *Marsden* decision itself to see if it provides any clues about whether the transfer of appellant's motion was permissible. In *Marsden*, the California Supreme Court ruled that although trial courts have considerable discretion in deciding whether to grant an indigent defendant's request for a new attorney, they cannot deny such a request without giving the defendant the opportunity to explain why he is unhappy with current counsel. (*Marsden, supra*, 2 Cal.3d 118 at p. 124.) In so ruling, the *Marsden* court did not address the issue presented in this case, i.e., whether the hearing must be conducted by the trial judge or whether the matter may be transferred to another judge for resolution. But we think it said a lot that supports Judge Rogan's measures and nothing that calls them into question.

One of the reasons the *Marsden* court gave for requiring a hearing on the defendant's request for a new attorney is that "[t]he defendant may have knowledge of conduct and events relevant to the diligence and competence of his attorney which are not apparent to the trial judge from observations within the four corners of the courtroom. Indeed, '[w]hen inadequate representation is alleged, the critical factual inquiry ordinarily relates to matters outside the trial record[.]" (*Marsden, supra,* 2 Cal.3d at p. 123.) This consideration militates against adopting a strict rule requiring *Marsden* motions to be heard by the defendant's trial judge. Although for practical purposes the trial judge will usually be in the best position to rule on the defendant's request for a new attorney, the possibility he/she might be prejudiced by material outside the record – material counsel or client might wish to keep confidential until all matters were resolved – is a significant

6

consideration, especially where the defendant is about to go forward on a bench trial before him. Under those circumstances, the need to keep behind-the-scenes defense issues from being revealed seems both paramount and obvious.

*Marsden* addressed concerns about the potential for prejudice resulting from the trial judge's exposure to information about the defendant's relationship with his attorney. The trial court in *Marsden* actually cited this concern in refusing to explore the defendant's reasons for wanting another attorney. (*Marsden, supra,* 2 Cal.3d at p. 122.) However, since the case was being tried before a jury, the Supreme Court felt there was very little danger of prejudice resulting from a hearing on the issue. As a matter of fact, the court found it "difficult to comprehend how a defendant's statement made out of the presence of the jury to support his claim that his counsel is inadequate could adversely affect a judgment on the merits" in such a case. (*Id.* at p. 125.)

Unlike the situation in *Marsden*, the jury phase of this trial was already over when appellant made his motion for a new attorney in this case. However, there was still one count left to be adjudicated before Judge Rogan. Since appellant waived his right to a jury trial on that count, Judge Rogan was solely responsible for deciding the truth of that charge. That threatened to put Judge Rogan in a perilous position. It is one thing for a judge to compartmentalize information gained in the course of a *Marsden* hearing when his sole task is to administer the proceedings in a jury trial. But when, as here, the judge is about to be required to as trier of fact in a bench trial, the potential for prejudice increases substantially. In light of this danger, it was not unreasonable for Judge Rogan to transfer appellant's *Marsden* motion to another judge for resolution.

In arguing otherwise, appellant relies on *People v. Sanchez* (2011) 53 Cal.4th 80 (*Sanchez*) and *People v. Eastman* (2007) 146 Cal.App.4th 688 (*Eastman*). In those cases, the trial court entrusted a second defense attorney to decide the issue of whether the defendant's current attorney was representing the defendant in a competent manner. (*Sanchez, supra*, 53 Cal.4th at pp. 84-86; *Eastman, supra*, 146 Cal.App.4th at

7

pp. 687-695.)  This procedure was deemed improper because it amounted to an unlawful delegation of the court's decision-making authority.  (*Sanchez, supra*, 53 Cal.4th at p. 89; *Eastman, supra*, 146 Cal.App.4th at p. 697.)  Here, however, there was no such delegation to a second attorney.  Instead, the *trial court* fulfilled its obligation under *Marsden* to give appellant "an opportunity to state any grounds for dissatisfaction with [his] current appointed attorney.  [Citation.]"  (*Sanchez, supra*, 53 Cal.4th at p. 90.)  That being the case, it does not matter that appellant's *Marsden* hearing was conducted by a judge other than his trial judge.  Because appellant received a full and fair *judicial* hearing on his motion, his *Marsden* rights were adequately protected.

Appellant also contends Glenn was ineffective for requesting that his *Marsden* motion be heard by someone other than Judge Rogan.  The contention is based on the assumption a defendant has a fundamental constitutional right to have his *Marsden* motion heard by his trial judge, and such right cannot be relinquished absent a personal waiver from the defendant.  Appellant asserts this right is inalienable, even in cases where the defendant's assertion of it may appear to be foolish.  (Cf. *People v. Windham* (1977) 19 Cal.3d 121, 128 [if a criminal defendant voluntarily elects to represent himself, the trial court must permit him to do so, "irrespective of how unwise such a choice might appear to be."].)

For the reasons explained above, however, while we recognize the defendant's right to a hearing, we do not believe the law requires his *Marsden* motion to be heard by the judge who is handling his trial.  A defendant has every right to petition for a new attorney under the guidelines set forth in *Marsden*, but that does not give him or her the concomitant right to decide which judge will hear that petition.  Rather, that decision is vested within the trial court's broad authority to fairly administer the matters that come before it.  Under the circumstances presented in this case, we find it was entirely permissible – indeed, probably wise – for Judge Rogan to transfer appellant's *Marsden* motion to another judge for adjudication.  There is no basis for reversal.

8

DISPOSITION

The judgment is affirmed.


                                        BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.


9