Filed 10/16/13  P. v. Thao CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C069868 |
| Plaintiff and Respondent, | (Super. Ct. No. CM034158) |
| v. | |
| TOUA DELYNN THAO, | |
| Defendant and Appellant. | |

Defendant Toua Delynn Thao pleaded no contest to first-degree felony murder (Pen. Code, § 187, subd. (a); unless otherwise stated, statutory references that follow are to the Penal Code) and admitted he was engaged in a home-invasion robbery (Pen. Code, § 190.2, subd. (a)(17)) at the time of the offense.  Before sentencing, defendant moved to withdraw his plea, claiming ineffective assistance of counsel.  The trial court held an *in camera* hearing and, after applying the standard set forth in *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), also denied defendant's request for new counsel and his motion to withdraw his no contest plea.

1

On appeal, defendant contends the trial court failed to appoint new counsel to represent him on the plea withdrawal motion and, alternatively, failed to make proper inquiry in conducting the *Marsden* hearing. We affirm the judgment.

FACTS AND PROCEEDINGS

Defendant and five other juveniles (the co-defendants) broke into the home of 73-year old Frank B. Frank B. had been targeted after one of the co-defendants spotted money and other items while visiting Frank B.'s home.

Once inside the house, defendant and his cohorts were confronted by Frank B. One of the co-defendants struck Frank B. on the head several times with a baseball bat. Frank B. collapsed in the hallway, bleeding. Defendant and the others spent another 20 minutes ransacking the house before finally leaving with their plunder. Frank B. crawled to the phone and called 911. He was transported to the hospital, where he later succumbed to his injuries.

Defendant was charged with felony murder of Frank B. (§ 187, subd. (a)--count 1) and home invasion robbery in concert (§§ 211, 213, subd. (a)(1)(A)--count 2). The complaint alleged that, with respect to count 1, the murder of Frank B. was aided and abetted by defendant while engaged in the commission of the home invasion robbery (§ 190.2, subd. (a)(17)).

Defendant entered a plea of no contest to count 1 in exchange for dismissal of count 2 and the People's stipulation not to proceed with life without the possibility of parole.

Before sentencing, defendant moved to withdraw his plea. At defense counsel's request, the court held an *in camera* hearing for the purpose of conducting a *Marsden* inquiry to determine whether substitute counsel should be appointed to present defendant's motion to withdraw his plea (*People v. Smith* (1993) 6 Cal.4th 684, 695-696 (*Smith*)). Aided by his attorney, defendant argued he was innocent and explained why

2

defense counsel was incompetent and why he should not have heeded counsel's advice to accept the plea deal offered to him. At the conclusion of the hearing, the court denied both motions, finding they were the result of defendant's change of heart and not a misunderstanding about the consequences of his plea or a breakdown in the attorney-client relationship.

The court sentenced defendant to 25 years to life. Defendant filed a timely notice of appeal. The court granted his application for certificate of probable cause.

DISCUSSION

I

*Post-plea Marsden Hearing*

Defendant contends the trial court failed to properly conduct the post-plea *Marsden* hearing. He urges us to remand for further *Marsden* proceedings. Concluding there was no error, we decline to do so.

In a case such as this, where the defendant indicates to the court, after conviction, his desire to withdraw his plea based on a claim that his current counsel provided ineffective assistance, a trial court is obligated to conduct a *Marsden* hearing on whether to discharge current counsel for all purposes and appoint new counsel "only when there is 'at least some clear indication by defendant,' either personally or through his current counsel, that defendant 'wants a substitute attorney.' [Citation.]" (*People v. Sanchez* (2011) 53 Cal.4th 80, 90 (*Sanchez*).)

Once a defendant has so indicated, the trial court must permit him to articulate the basis for his concerns so that the court can determine if they have merit and, if necessary, appoint new counsel. (*Marsden, supra,* 2 Cal.3d at pp. 123-124; accord, *Smith, supra,* 6 Cal.4th at p. 691.)

"[T]he trial court should appoint substitute counsel when a proper showing [pursuant to *Marsden*] has been made at any stage [of the proceedings]. A defendant is

3

entitled to competent representation at all times, including presentation of a . . . motion to withdraw a plea." (*Smith, supra,* 6 Cal.4th at p. 695; accord, *Sanchez, supra,* 53 Cal.4th at pp. 88-89.)

"[S]ubstitute counsel should be appointed when, and only when, necessary under the *Marsden* standard, that is whenever, in the exercise of its discretion, the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel [citation], or, stated slightly differently, if the record shows that the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation]. This is true *whenever* the motion for substitute counsel is made." (*Smith, supra*, 6 Cal.4th at p. 696; accord, *Sanchez, supra,* 53 Cal.4th at p. 89.)

"[T]he standard expressed in *Marsden* and its progeny applies equally preconviction and postconviction." (*Smith, supra*, 6 Cal.4th at p. 694; accord, *Sanchez, supra,* 53 Cal.4th at p. 88.) That is, the alternative language in *People v. Stewart* (1985) 171 Cal.App.3d 388, 395 and *People v. Reed* (2010) 183 Cal.App.4th 1137, 1144, requiring that a defendant make a "colorable claim" of the "possibility" of ineffective representation is synonymous with the "substantial showing" requirement in *Marsden.* (*Smith, supra,* 6 Cal.4th at p. 693.)

A trial court's denial of a request for substitute counsel "will not be overturned on appeal absent a clear abuse of . . . discretion." (*Smith, supra*, 6 Cal.4th at p. 696.)

There was no abuse of discretion here. First, the court explored the reasons underlying defendant's request for substitute counsel, giving him several opportunities to articulate his concerns regarding both the plea and his relationship with his attorney. Defendant proclaimed his innocence, said he was confused about why he had been charged with first-degree murder, and complained that he thought it unfair to have been charged with a crime in which he had no role. Defendant said he was prepared to go to

4

trial, but his attorney told him to take the plea deal because he could not win at trial and the district attorney was "going to get what he wants in the end." Defendant also said he felt intimidated and bullied into taking a plea offer he "did not want to agree with," the ramifications of which he claimed not to understand.

The court made inquiry into each of defendant's complaints, pressing for the details about the consequences of his plea he did not understand. Defendant claimed he did not understand "the rules and everything." He also claimed he did not know he was going to get life with parole but, after looking up the definition of first-degree murder while in jail awaiting trial, he decided he should not have accepted the plea deal because he was innocent of the charges against him. Defendant confirmed that he knew what the maximum punishment was at the time he entered his plea, but claimed he did not really understand the deal and just agreed to "get the deal over with."

The court asked defendant how he was intimidated and bullied into taking the plea. Defendant said the numbers intimidated him (i.e., "25 years to life, 34 years to life, or life without parole"), as well as the fact that the day he entered his plea was a "long day" and he felt pressured after hearing other people in the holding cell complain about their own plea arrangements.

When asked how his attorney failed him, defendant said counsel and the private investigator told him he was going to lose if he went to trial. He lamented the fact that he did not know he had the option of obtaining new counsel so that he "might have a better defense," but admitted he did not tell his attorney all the facts and circumstances pertinent to his case.

Next, the court asked defense counsel to respond to defendant's claims. Counsel described the efforts he undertook in representing defendant, including investigation, preparation for trial, discussions with counsel for each of the co-defendants, and participation in plea negotiations with the district attorney, and explained that, given the dearth of potential witnesses to testify on behalf of defendant, his trial preparation

5

consisted mainly of reviewing the co-defendants' interviews with law enforcement and defendant's own statements to police.

Counsel stated that all the co-defendants had agreed to make statements and provide testimony against defendant. He noted that while there was no physical evidence tying defendant to the murder of Frank B., other evidence tied him to the home invasion robbery that led to Frank B.'s death, such as defendant's own inculpatory statements, physical evidence tying him to the vehicle that transported him and his co-defendants to Frank B.'s home the night of the crime, and the co-defendants' statements placing him at the scene of the crime. Counsel noted further that there was evidence both of a prior relationship between defendant and his co-defendants going back some years, and of a meeting between them which led to the trip to Frank B.'s home the night of the crime.

Defense counsel described conversations he had with defendant regarding what was necessary to prove the crimes charged and the fact that, given the evidence (including defendant's apparent admission to police that he "ended up with" money taken from Frank B.'s home), there did not appear to be a defense to the first-degree burglary charge which, if established, would satisfy the felony murder charge. Counsel also described his fruitless efforts to negotiate a plea deal for a second-degree murder charge.

The court invited defendant to state any additional reasons why the plea should be withdrawn or substitute counsel appointed, offering him the opportunity to write his thoughts down on paper. At defendant's request, defense counsel assisted him in communicating a response. Through his counsel, defendant informed the court that his description to police of what occurred at Frank B.'s house the night of the crime was based not on defendant's own personal experience but on information defendant learned from one of his co-defendants. Defendant told the court he was afraid during the police interviews and did not realize the impact of his statements, and that he told police investigators, when they came to talk to him the second time, that he wanted to talk to his attorney.

6

When the court asked defense counsel whether this new information changed his analysis of defendant's likelihood of success at trial, counsel said it did not, explaining that "that aspect of [defendant's] case was considered somewhat," and that he and defendant had discussed the police interviews "several times." Counsel explained that, in contemplating the admissibility of defendant's police interviews, he considered defendant's youth, that the two "experienced" investigators were interviewing defendant without an adult present, and that the investigators "repeatedly during the course of that interview . . . called [defendant] a liar," concluding he "believed and would have made a motion . . . if that interview was to be admitted or the result of that interview were to be admitted into evidence, prior to that happening there would have been a challenge to the admissibility of that interview against [defendant]." Counsel explained further that he intended to rely on *Doody v. Schriro* (9th Cir. 2010) 596 F.3d 620 (*Doody I*), as he "felt that perhaps those facts fit [defendant's] case," but concluded that "[t]here was then a supreme court case that came down that basically, as far as I'm concerned, made that argument under [*Doody I*] almost impossible to support as far as--well, it just wasn't available." Given that, defense counsel said, he concluded defendant's statements during the police interview "would likely be admitted into evidence," and "that was again a factor that I discussed with [defendant] and indicated that that was again a reason or a basis as far as the steps that he took to change his plea and accept the plea offer . . . ."

The trial court offered defendant a final opportunity to state why substitute counsel should be appointed. Defendant told the court he had difficulty communicating with defense counsel, and that he tried to but could not convince counsel of his innocence.

The court denied defendant's motion, concluding there was no evidence of a breakdown in the attorney-client relationship or that defendant was misadvised of either the law or the consequences of his plea, only that defendant had had a change of heart regarding the plea.

7

We conclude the trial court properly discharged its obligations under *Marsden,* giving defendant a full opportunity to specify his concerns, eliciting an explanation from defense counsel in response to each of those concerns, and making such inquiries of defendant and trial counsel as necessary. (*People v. Reed, supra,* 183 Cal.App.4th at p. 1144.)

Defendant argues the trial court failed to "make any effort to find out what the law was" before concluding he was not misadvised. He argues his own statement that he told detectives he wanted to talk to his attorney, and defense counsel's statement indicating counsel would have challenged the admissibility of defendant's statements to police but believed the *Doody I* case no longer provided authority to do so, "should have been a direct cue" for the trial court to take action, namely, to develop the record to determine whether defense counsel properly considered the *Miranda* issue raised by defendant, and whether defense counsel was correct in his legal assessment of the *Doody I* case. (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].) The claim lacks merit.

Defendant cites no authority, and we know of none, compelling the trial court to conduct legal research of its own to determine whether defense counsel's assessment of the *Doody I* case was correct. "[A] *Marsden* hearing is not a full-blown adversarial proceeding, but an informal hearing in which the court ascertains the nature of the defendant's allegations regarding the defects in counsel's representation and decides whether the allegations have sufficient substance to warrant counsel's replacement." (*People v. Hines* (1997) 15 Cal.4th 997, 1025.) Defense counsel explained that he discussed with defendant several times the police interviews, and that he conducted legal research to determine whether a potential motion to suppress might be viable. The court is entitled to accept counsel's explanation of his conduct and is not obliged to inquire, sua sponte, into the actual efficacy of his efforts. (*Smith, supra,* 6 Cal.4th at pp. 696-697; *People v. Webster* (1991) 54 Cal.3d 411, 436.)

8

In any event, defendant's complaints relate to trial tactics and strategy and, under the circumstances of this case, do not constitute the type of "irreconcilable conflict" that indicates defense counsel's representation was inadequate. (*People v. Welch* (1999) 20 Cal.4th 701, 728-729.)

" 'Accordingly, we find no basis for concluding that the trial court either failed to conduct a proper *Marsden* inquiry or abused its discretion in declining to substitute counsel.' " (*Smith, supra,* 6 Cal.4th at p. 697, quoting *People v. Fierro* (1991) 1 Cal.4th 173, 206-207.)

II

*Ineffective Assistance of Counsel*

Defendant contends he made a "colorable claim" of ineffective assistance of counsel when, during the post-plea *Marsden* hearing, it was revealed that his trial attorney's advice to enter a no contest plea was based in part on counsel's belief, later found to be erroneous, that *Doody I*, the opinion upon which counsel hoped to rely to suppress defendant's statements to police, had been nullified. Thus, defendant contends, the trial court should have appointed substitute counsel to represent him in his motion to withdraw his plea. We conclude defendant failed to demonstrate a reasonable probability that, but for defense counsel's incompetence, he would not have entered a plea of no contest and would instead have insisted on proceeding to trial.

A criminal defendant has a constitutional right to effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 684-685 [80 L.Ed.2d 674, 691-692].) To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate his attorney's representation was deficient--that is, that it "fell below an objective standard of reasonableness"--and that the deficiency was prejudicial. (*Id.* at p. 688; see also *id*. at pp. 687-688, 692.) To show prejudice, the defendant must demonstrate that "there is a reasonable probability that, but

9

for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id*. at p. 694.)

In the context of a plea bargain, we specifically ask whether there is a reasonable probability that, but for counsel's incompetence, defendant would not have pleaded guilty and would have insisted on proceeding to trial. (*Hill v. Lockhart* (1985) 474 U.S. 52, 58-59 [88 L.Ed.2d 203, 209-210].) The answer here is no.

Because defendant's motion to withdraw his plea was based on a claim of ineffective assistance of counsel, it was incumbent upon him to demonstrate the incompetence of which he now complains *at the Marsden* hearing. He did not, indeed because the error was not yet known to either him or his attorney. Nor did defendant demonstrate any incompetence of counsel at all. When asked to explain his allegation of attorney incompetence, defendant complained of difficulty convincing defense counsel of his innocence. Defendant also complained of communication troubles with his attorney, but defense counsel's explanation showed quite the opposite, as did the fact that defendant specifically requested the assistance of his attorney to communicate with the court during the *Marsden* hearing, suggesting that any "asserted communication problems were not insoluble and had not given rise to such an irreconcilable conflict that ineffective representation was likely to result." (*People v. Hines, supra,* 15 Cal.4th at p. 1026.) Defendant said he felt bullied and intimidated into taking the plea deal, but upon inquiry revealed he felt bullied and intimidated not by his attorney, but by the numbers, the long day, and the people in the holding cell with him complaining about their own plea negotiation woes.

Although he told the court he took the plea deal because his attorney told him he could not win at trial, he made no substantive complaints regarding his attorney's incompetence in doing so. "[P]resenting, and even urging, acceptance of the prosecution's settlement offer is an insufficient basis for substitution of counsel."

10

(*People v. Shoals* (1992) 8 Cal.App.4th 475, 497.) Proclamations of innocence and statements of regret for having entered the plea aside, defendant provided no evidence of attorney incompetence.

Even assuming counsel's error had been brought to the attention of the trial court, defendant has not shown a reasonable probability that, but for the error, the result would have been different. At the *Marsden* hearing, defendant told the trial court that, on the day he entered his no contest plea, he was ready to go to trial but accepted the plea offer on counsel's advice instead. However, he did not allege then, nor does he contend now, that he would have rejected the plea deal and proceeded to trial had he known counsel's advice regarding the potential suppression of his statements to police was erroneous.

Defendant claims the prejudice standard "would be an easy burden to meet" given that he was induced by counsel's wayward advice to plead no contest, something he would not otherwise have done as evidenced by the fact that he previously turned down the same plea offer just weeks prior to entry of his no contest plea. This argument is lacking for several reasons.

First, as previously discussed, defendant made no claim at the *Marsden* hearing that he would not otherwise have accepted the plea offer but for defense counsel's error. Even on appeal, appellate counsel offers no argument as to the ways in which a cure of trial counsel's misadvice regarding the *Doody I* case would have actually resulted in a determination more favorable to defendant, arguing simply that defendant is entitled to reversal and remand for appointment of substitute counsel for the purpose of conducting further proceedings on the motion to withdraw his plea. However, such further proceedings would be fruitless, the trial court having already determined not only that defendant was well aware of the consequences of his plea, but also that, in the face of significant evidence against him, defendant elected to forego trial in exchange for a plea deal that guaranteed he would not face a sentence of life without the possibility of parole.

Next, the record makes clear that the admissibility of defendant's statements to police was only "*a* factor . . . *a* reason or *a* basis" for counsel's advice that defendant accept the plea offer. (Italics added.) That is, defense counsel's advice to enter a no contest plea had as much to do with the perceived inability to suppress defendant's statements to police as it did the cumulative effect of the other evidence against defendant which, as defense counsel pointed out, included evidence of a meeting between defendant and his co-defendants leading to the trip to Frank B.'s house, physical evidence tying defendant to the car used to transport them there, and the fact that all of the co-defendants had agreed to make statements or testify against defendant, placing him squarely inside Frank B.'s house at the time of the home invasion robbery which led to the deadly attack on Frank B.

Moreover, on the question of prejudice, while it is certainly true that defendant's trial counsel should have found *Doody v. Ryan* (9th Cir. 2011) 649 F.3d 986 (*Doody II*), we are not convinced that it would have or should have changed the defense attorneys advice to defendant to accept the plea he did.

In *Doody II*, the defendant, a juvenile, was interrogated concerning multiple homicides over a span of "nearly thirteen hours of relentless overnight questioning of a sleep-deprived teenager by a tag team of officers" (*Doody II, supra,* 649 F.3d at p. 990) and the detectives undertaking the interrogation, in giving him his *Miranda* rights made "significant deviations from the printed *Miranda* form and [repeatedly minimized] the warnings' significance." (*Doody II,* at p. 1002.)

First, the trial court was not bound to follow federal precedent. But even if persuasive on its facts, *Doody II* presented a far more serious and significant violation of Doody's rights against self-incrimination than is reflected in this record. While we do not have a copy of the statement, other than defendant's belated claim that he asked for a lawyer which no doubt his attorney had looked into, there is no inkling here that his rights were violated in any way or that his statement to the law enforcement officers was

12

involuntary. Thus, a familiarity with *Doody II* would in all likelihood have made little difference to counsel in rendering his advice on the plea offer.

Finally, prejudice has not been shown in light of defendant's understanding of the benefits of his plea bargain. The record reveals that defendant's no contest plea was the product of significant discussion between, and consideration by, defendant and his attorney. Prior to entry of the plea, counsel and defendant spoke for several hours, during which time counsel explained his analysis of the case, answered defendant's questions, and reviewed and discussed the plea form, which expressly states that the negotiated settlement includes dismissal of count 2 and the district attorney's agreement not to seek life without the possibility of parole. The trial court confirmed defendant's understanding of the plea form at the plea hearing, verifying in particular that he "carefully read" and "carefully review[ed]" the document before signing it. When the court asked defendant if he had any questions "about what you're doing in entering your plea," defendant replied, "No." The court asked defendant if he understood "that the maximum sentence that you can receive as a result of your plea would be 25 years to life." Defendant replied, "Yeah." The court explained further, "I say that it's 25 years to life because the People have agreed not to seek life without the possibility of parole. Is that your understanding?" Defendant responded that it was. Even assuming defendant knew about counsel's erroneous belief regarding the state of the law, we cannot say with any certainty that he would not have entered the plea and would have proceeded to trial.

On the face of this record, defendant has not shown a reasonable probability that, but for defense counsel's erroneous understanding of the state of the law pertaining to the *Doody I* case, he would have foregone the plea offer in favor of going to trial and risking guilty verdicts on both counts and a possible sentence of life without the possibility of parole.

DISPOSITION

The judgment is affirmed.

      HULL      , Acting P. J.

We concur:

      BUTZ      , J.

      MURRAY      , J.