Filed 4/30/14  P. v. King CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C073086 |
| Plaintiff and Respondent, | (Super. Ct. No. CM035962) |
| v. | |
| RICKY EDWARD KING, | |
| Defendant and Appellant. | |

A jury convicted defendant Ricky Edward King of first degree burglary in violation of Penal Code section 459 (unless otherwise stated, statutory references that follow are to the Penal Code) and found the offense was a serious and violent felony within the meaning of section 667.5, subdivision (c) because at the time of the burglary, there was a person present in the home who was not an accomplice of the defendant.  The trial court found a prior prison term allegation to be true.  Sentenced to state prison, defendant appeals, contending the trial court committed prejudicial error in denying his

1

*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) motion and in appointing separate counsel to prepare a motion for new trial. We affirm the judgment.

FACTS AND PROCEEDINGS

Defendant's contention requires only a brief recitation of the facts underlying the offense. About 11:30 a.m. on March 4, 2012, the victim heard a knock on the front door of her home, which she did not answer because she was in bed. Shortly thereafter, she heard a knock on her bedroom sliding glass door. When she did not answer a second knock, defendant opened the sliding glass door, entered her bedroom, stole her purse sitting on a chair, and left, all while the victim hid under the covers. A few days before the burglary, the victim had met defendant through a mutual friend. When she and the friend confronted defendant about the burglary, defendant claimed initially that he had been home all day but changed his story because his housemate knew he had been gone earlier in the day. Defendant then claimed that he knocked on the victim's front door but left after no one answered. The victim called the police. When interviewed by a deputy sheriff, defendant claimed that he knocked on the victim's sliding glass door but denied stealing her purse. Defendant testified he went by the victim's home to see if she needed anything from the store. Defendant claimed he tapped on the sliding glass door twice and left when no one answered.

DISCUSSION

Defendant contends that the trial court prejudicially erred in appointing separate counsel to prepare a motion for new trial based on ineffective assistance without relieving appointed defense counsel, who continued to represent defendant. He argues the trial court's actions were contrary to the directions in *People v. Smith* (1993) 6 Cal.4th 684 (*Smith*) and *People v. Sanchez* (2011) 53 Cal.4th 80 (*Sanchez*). We conclude that the trial court did not err in denying the *Marsden* motion and any error in appointing separate counsel to prepare the new trial motion was harmless.

2

Three *Marsden* hearings were conducted. Prior to trial, Judge Steven Howell conducted a hearing at which defendant stated that he did not wish to have defense counsel relieved and another attorney appointed to represent him, and that he was satisfied with defense counsel's representation. Judge Howell determined that defendant's *Marsden* motion was withdrawn. Discussion during the hearing reflected that defendant, who had done some research at the jail, disagreed with defense counsel's interpretation of defendant's speedy trial rights. Defense counsel "wanted to make sure that there was a record of [defendant's] position." The court agreed with defense counsel's interpretation. The court "permi[tted]" defense counsel to file defendant's "points and authorities" "under a coversheet . . . indicating that [defendant] wanted these filed . . . ."

After defendant was convicted, defense counsel filed a motion for a new trial incorporating defendant's handwritten notes wherein he claimed juror misconduct during voir dire and prosecutorial misconduct during opening and closing argument and in presenting evidence. Defense counsel also filed a motion to dismiss again incorporating defendant's handwritten notes wherein he claimed a violation of his speedy trial rights. While these motions were pending, defendant sought substitution of counsel.

At the September 27, 2012, *Marsden* hearing before Judge Kelly, both defense counsel and defendant were sworn. Defendant explained he had filed a complaint with the State Bar which created a conflict of interest for defense counsel. Defendant stated that he alleged in his complaint that he had "composed" motions which defense counsel "refused to compose" such as his motion to dismiss for violation of his speedy trial right, and that during trial, defense counsel failed to object or seek a mistrial when a prospective juror made "racist, slanderous, [and] inflammatory comments" and failed to object when the prosecutor committed misconduct. Defendant also stated that he still had "the utmost respect" for defense counsel who had "[defendant's] best interests at heart" and that defendant "only asked for this Marsden hearing because [he] felt it would be a

3

conflict for [defense counsel] to have to defend his self [*sic*] against [defendant] and to be [his] advocate."

Defense counsel stated that he had been an attorney for 25 years, 22 years as a public defender, and had represented "thousands" of people at hearings and jury trials in juvenile dependency, delinquency cases, and adult criminal cases. Defense counsel had only been notified that defendant had filed a complaint with the State Bar but defense counsel did not know the particulars. With respect to the speedy trial motion, defense counsel recounted the disagreement and discussion concerning the issue at the *Marsden* hearing before Judge Howell. Defense counsel admitted that he did not object during voir dire. He explained that prior to voir dire, the court and counsel had discussed whether either party wanted to ask about defendant's race and defense counsel stated that he "thought it was important that we ask the question." Defense counsel confirmed that a prospective juror provided "a more direct response" than expected and "made some very forthright comments" that "could well have tainted the jury and the panel." Defense counsel did not believe there was a conflict because defendant had filed a complaint with the State Bar. With respect to the motion for a new trial, defense counsel thought "perhaps, I should have at the very inception asked Judge Lucena [the trial judge] to look into appointing another attorney." Defense counsel noted that the pending motion for new trial which he put together for filing had been authored by defendant.

With no objection from defendant or defense counsel, Judge Kelly spoke with Judge Lucena. Thereafter, Judge Kelly concluded that because the *Marsden* motion "seems to be wrapped up in the motion for new trial, or at least there are elements of the motion for new trial," Judge Lucena should hear and decide the *Marsden* motion. Defense counsel and defendant agreed.

At the October 16, 2012, *Marsden* hearing, both defense counsel and defendant were sworn. With everyone's agreement, Judge Lucena had reviewed the transcript of the hearing before Judge Kelly and understood defendant's issues (the State Bar

4

complaint; the conflict between defendant and defense counsel concerning motions defendant composed that defense counsel did not submit initially, but submitted thereafter; defendant's speedy trial claim; defense counsel's failure to object and seek a mistrial for racist comments by a prospective juror; and defense counsel's failure to object to prosecutorial misconduct). Defendant stated that defense counsel was "quite an adequate attorney." Defendant understood that defense counsel chose the course of defense. Defendant insisted that Judge Howell abused his discretion concerning his speedy trial claim and that defense counsel disagreed but had since come to support defendant's position. The following discourse ensued:

"THE COURT: I think what you are telling me is [defense counsel] has since filed the motions that you were concerned about and that maybe you are not asking for a Marsden hearing now. Is that what you're telling me? Or maybe that portion of why you were asking for a Marsden hearing is no longer at issue.

"DEFENDANT KING: The Marsden issue to have [defense counsel] – not to have [defense counsel] it's not paramount to me. The violations or the motions being held on my behalf is what I'm trying to do. Like I said, [defense counsel] appears – and I really believe he's well competent in representing me. I think he chose his course of action because of his reasons, but he has hence decided to support me in the invocation of my rights or what I call my civil rights. I don't know how any other way to say it. [¶] I mean, I do have a complaint at bar against him, but the complaint at bar, as I told him earlier this week when we did talk, it was not deliberately after him. Where I read in the literature it was government attorneys. It was specifically against the prosecutor. That is where that originated from; subornation of perjury. And so on that that was against the prosecutor. But repeatedly I read that government attorneys have a duty and in this case a public defender. He is a government attorney. And that is why it would have been, I think, prejudicial to submit regarding the prosecutor and not my attorney."

5

Defendant repeated that he recognized that defense counsel controlled the defense but that defendant thought there "should have been more objections, specifically when [the prosecutor] got to the name calling." Defendant also complained there were many instances of perjured testimony at trial.

The court queried again whether defendant wanted substitute counsel and defendant responded, "I don't know. I mean, can [defense counsel] have any input into this thing at all?" The court explained that defendant had asked for substitute counsel and that the court "need[ed] to know unequivocally whether [defendant was] making that request or not," adding that it "sound[ed] like to [the court] you're vacillating." Defendant agreed, "I am vacillating." Defendant added that the complaint at the State Bar was the primary issue and he did not understand how defense counsel could continue to represent him. He acknowledged that Judge Kelly had advised that attorneys "are a special kind of individual" and are "accustom[ed] to being attacked." Defendant stated, "So I don't know if that helps you or not. I'm still vacillating. I'm sorry. But I don't want – I don't want to look my angel in the face and discard him to that degree or provide for my salvation in this whole thing. That would be retarded. That would be – you know what I'm saying. I don't want to do that for real. But if I could submit the letters to you and the complaints and the motions without that letter, I would do so now. If that makes it any easier for you, I would retract the request for the Marsden hearing." The court reiterated that it would hear and rule on defendant's request for substitution if that was what he wanted, commenting "[i]t's not what makes it easier for me." Defendant asked whether he could withdraw his request for new counsel and renew his request later. The court replied that repeated requests were "frowned upon" if done as "delay tactics" but not so if there was a valid reason.

After defendant conferred with defense counsel off the record, defense counsel commented he believed defendant was not guilty of the charge notwithstanding the verdict but because he was convicted, defense counsel considered his performance but

6

did not think the *Marsden* motion should be granted. Defense counsel noted the new trial motion raised his failure to object, and for that reason he thought "new counsel perhaps should be considered" for purposes of the new trial motion. Defense counsel then proceeded to address defendant's claims. Defense counsel stated that he did not know what defendant had alleged in his complaint to the State Bar but suspected the allegations would be more appropriately addressed by the trial court or on appeal and that such allegations "would not hinder [his] ability to represent [defendant]." Defense counsel informed the court that his filing of defendant's paperwork on the speedy trial issue was "not an endorsement" because defense counsel did not believe that it was correct and stated he was "mindful of [his] obligation as an attorney not to file motions which [he] believe[d] [were] not meritorious" but Judge Howell granted him "leave to file it [under cover sheet] notwithstanding [his] feelings" to preserve the issue for defendant. With respect to the prospective juror's comments, defense counsel thought "the remaining jurors would simply put that into context and could remain fair and impartial." With respect to the prosecutor's labeling of defendant, defense counsel noted it was argument to the jury.

Defendant complained that the appellate court ruled against him on his speedy trial claim because he had not asserted his right in a timely manner, noting that his invocation of his right was "hidden in the Marsden hearing." Defendant complained that "even with stern admonition from [the court] that [the court] could have erased [the prospective juror's] comments from the jurors' minds." Defendant complained that when the prosecutor said, " 'Look at him. Look at him,' . . . that was prejudicial and slanderous." Defendant asserted the prosecutor committed misconduct in eliciting the victim's perjured testimony and defense counsel did not object. Defendant also stated that he complained to the State Bar about the prosecutor cross-examining defendant about his prior conviction.

7

The court queried again whether defendant wanted defense counsel removed as his attorney for all purposes. Defendant responded, "At this point we should just go ahead and continue and let's just withdraw or let's go ahead and remove him if that is what you decide to do. I would rather – in my heart I'd rather keep him, but I have made the motion and there is evidence to support the claim. Like I said, if I had to do it all over again, I would not submit the letter. But I'm not going to back down."

The court ruled as follows:

"In this matter I find that [defense counsel] has properly represented [defendant] and will continue to do so. He's a very experienced criminal defense attorney. He has represented [defendant] through trial. He's attempted to balance his ethical duties in filing meritorious complaints or motions with the Court with his client's concerns regarding certain areas. And it appears to the Court that [defense counsel] will continue to represent [defendant] to the best of his ability and in a competent fashion.

"Specifically, I do not find any reason for him to be relieved as [defendant's] attorney due to a state bar complaint against the attorney. He's not aware of the allegations, and he can set aside any of those issues and proceed in his representation of [defendant] irrespective of those issues.

"The 1382 motion was raised in the Marsden hearing with Judge Howell. It was also in this Court's mind not meritorious and properly not raised. He has followed through with the other motion for new trial and motion to dismiss that [defendant] has requested, and it doesn't appear to the Court that there is any outstanding conflict as it relates to not filing those motions.

"With regards to whether [defense counsel] should continue to represent [defendant] on the motion for new trial, I agree that it would be appropriate for the Court to appoint counsel to litigate that motion because of the underlying claims in that motion. And I would be intending to make a subsequent appointment for that purpose only.

8

"With regards to the issues within that motion for new trial and before the Court in this Marsden, the issue that [defense counsel] failed to object to comments by a prospective juror or failed to request that the panel be excused because of those comments, that's certainly an issue that will need to be further litigated in the motion for new trial. But looking at the very difficult balance that an attorney must strike when faced with the jury panel or a population in a county that may not be reflective of a defendant's racial background and the sensitivity that is necessary in ferreting out persons who would simply stand quiet and make a decision based on their biases toward someone, it's a very difficult line to walk. And Counsel and the Court addressed the issue before we even started jury selection and recognize the difficulty that we face to ensure that [defendant] receives a fair trial by a jury who would not be prejudiced against him because of his race. And after discussion between the attorneys and the Court, it was decided that that inquiry should be made about jurors' bias in that area.

"And I think [defense counsel's] comments to Judge Kelly during the earlier Marsden hearing accurately reflect all of our unexpected – all of our surprise at such a forth – well, such a direct statement by a prospective juror. And I'm sure it's a very challenging issue for everyone when that happens. And looking back on the proceedings, it seems to me that Counsel made every attempt to insure that the jury that was selected was a fair and unbiased jury. And I – I think that there are clear strategic reasons why an attorney may or may not raise a request to excuse an entire panel that are valid reasons. And I cannot say at this hearing that there is a basis for having [defense counsel] removed as your attorney of record for all purposes in that regard. And I've carefully considered that allegation.

"As to the prosecutorial misconduct and the failure to object to the comments during closing, again there are strategic reasons why an attorney may or may not object during a closing argument. The jury has already been advised that closing arguments by

9

the attorneys are not evidence.  And there may very well have been strategic reasons why those objections were not raised at this hearing.

"Based on the information that has been presented to me, I cannot find that [defense counsel] should be relieved for all purposes in this matter based on the failure to object to prosecution's statements.  Furthermore, I find that there has not been a breakdown in the relationship between [defendant] and [defense counsel] that would make it impossible for [defense counsel] to properly represent [defendant].  Specifically, I think, as commented on by [defendant] in these proceedings, he has respect for [defense counsel].  He believes [defense counsel] will continue to represent him.  And he understands the attorney's role in his representation.  And it seems to me that there is no acrimonious difficulties between attorney/client that would under[m]ine [defense counsel's] continued representation of [defendant].  So therefore, the motion is denied."

Thereafter, the court appointed separate counsel (Philip Heithecker) to represent defendant on his motion for new trial.  Heithecker filed a document entitled "Supplemental Briefing in Support of Defendant's Motion for New Trial" in which he discussed prosecutorial misconduct in examining witnesses, eliciting opinions from witnesses that other witnesses were not credible, and misstating the law of reasonable doubt in closing argument.

At the hearing on the motion, Heithecker added a record cite of voir dire where defense counsel attempted to ensure that jurors would not use defendant's race to determine whether he was guilty or not guilty of the charge.  Heithecker then submitted on "the original motion filed by [defense counsel] with an attachment from [defendant]" and Heithecker's supplemental briefing.

Finding that the jury panel was not prejudiced by the prospective juror's comments and that the jury selected was free of racial bias, the court found no juror misconduct.  With respect to prosecutorial misconduct, the court found no merit to defendant's claim that the prosecutor's presentation of evidence, examination of

10

witnesses and closing argument were improper. The court also stated that the "standards set forth in Strickland ha[ve] not been met" and in any event, defendant suffered no prejudice. The court denied the motion for new trial. The court confirmed that defense counsel was appearing on the motion to dismiss based on the denial of defendant's speedy trial rights and denied that motion as well, finding that defendant's 60 days began on April 4, 2012, and trial began on May 21, 2012. The court relieved Heithecker and proceeded to sentencing with defense counsel representing defendant.

Defendant contends that he was "abandoned and unrepresented" in presenting the new trial motion on the basis of ineffective assistance of counsel since Heithecker simply adopted defendant's handwritten motion while defense counsel stood by. Defendant claims neither attorney "actually addressed head-on or argued [defendant's] assertions of ineffective assistance in failing to request a mistrial for collective juror bias, or ineffective assistance based on failure to object to incidents of prosecutorial misconduct." Because the trial court did not follow *Smith* and *Sanchez* and relieve defense counsel and appoint new counsel for all purposes, he argues reversal and remand are required because he was deprived of assistance at a critical stage of the proceedings.

"[S]ubstitute counsel should be appointed when, and only when, necessary under the *Marsden* standard, that is whenever, in the exercise of its discretion, the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel [citation], or, stated slightly differently, if the record shows that the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation]." (*Smith, supra,* 6 Cal.4th at p. 696.)

Here, defendant vacillated whether he wanted new counsel. Defendant appeared to respect defense counsel and appeared to recognize that his attorney had the authority to chart the course of his defense. Defendant fully aired his complaints about defense

11

counsel's performance. Defense counsel responded to defendant's complaints, explaining his disagreement with defendant's interpretation of his speedy trial rights, his trial tactics in not requesting a mistrial due to the prospective juror's comment, and his trial tactics in not objecting to the prosecutor's closing argument in which he attacked defendant's testimony. The court concluded that even assuming defendant wanted new counsel, he had not demonstrated that a failure to replace defense counsel would substantially impair defendant's right to assistance of counsel. The record does not show that defense counsel was not providing adequate representation or that defendant and defense counsel had become embroiled in such an irreconcilable conflict that ineffective representation was likely to result. The trial court did not abuse its discretion in denying defendant's *Marsden* motion.

We do not understand defense counsel's suggestion and the court's agreement to appoint separate counsel for the sole purpose of assisting defendant in preparing and presenting his new trial motion based on ineffective assistance of counsel when defendant had not made a sufficient showing for substitute counsel. We conclude, however, any error in doing so was harmless under the circumstances.

*Sanchez, supra,* 53 Cal.4th 80 "specifically disapprove[d] of the procedure adopted by the trial court . . ., namely, the appointment of a substitute or 'conflict' attorney solely to evaluate whether a criminal defendant has a legal ground on which to move to withdraw the plea on the basis of current counsel's incompetence. (*Id.* at p. 90.)

In *Sanchez,* the trial court had appointed substitute counsel to represent the defendant on a motion to withdraw his plea without conducting a *Marsden* hearing and determining whether the defendant had made a sufficient showing. (53 Cal.4th at pp. 84-86, 92.) The appellate court reversed and *Sanchez* affirmed the appellate court's decision. (*Id.* at pp. 92-93.)

Here, unlike the trial court in *Sanchez*, the trial court conducted an extensive *Marsden* hearing and concluded defendant had not made a sufficient showing for substitute counsel.

As stated in *Smith, supra,* 6 Cal.4th at page 695, the "[a]ppointment of counsel for the purpose of arguing that previous counsel was incompetent, *without an adequate showing by defendant*, can have undesirable consequences. . . The spectacle of a series of attorneys appointed at public expense whose sole job, or at least a major portion of whose job, is to claim the previous attorney was, or previous attorneys were, incompetent discredits the legal profession and judicial system, often with little benefit in protecting a defendant's legitimate interests. [¶] . . . When a *Marsden* motion is granted, new counsel is substituted for all purposes in place of the original attorney, who is then relieved of further representation. If the *Marsden* motion is denied, at whatever stage of the proceeding, the *defendant is not entitled to another attorney who would act in effect as a watchdog over the first*." (Italics added.)

Defendant received more than that to which he was entitled. Defendant did not seem to really want new counsel but defense counsel suggested that separate counsel be appointed to pursue defendant's new trial motion based on ineffective assistance. Defendant did not object to that procedure. Heithecker submitted on defendant's handwritten motion with supplemental briefing on prosecutorial misconduct and a citation to the record where defense counsel sought to ensure that the prospective jurors would not consider defendant's race in reaching a verdict. The trial court considered and discussed defense counsel's performance during the *Marsden* hearing. The court had presided over defendant's trial and observed defense counsel's performance firsthand. The court determined that defendant had not met the standards of *Strickland v. Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674], requiring a showing of deficient performance and prejudice as a result. The trial court did not err in relying on its own observations to reject defendant's complaints about defense counsel's performance.

13

(*People v. Hines* (1997) 15 Cal.4th 997, 1026.)  Any error in appointing separate counsel for the limited purpose of preparing and presenting defendant's new trial motion based on ineffective assistance of counsel was harmless under any standard.

DISPOSITION

The judgment is affirmed.


      HULL      , J.


We concur:


      BLEASE      , Acting P. J.


      HOCH      , J.