Filed 3/18/13  In re Robert X. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ROBERT X., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT X.,<br><br>Defendant and Appellant. | F065235<br><br>(Super. Ct. No. JL003047)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  David W. Moranda, Judge.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Cornell, Acting P.J., Poochigian, J., and Detjen, J.

On April 10, 2012,[1] pursuant to a negotiated disposition, appellant, Robert X., a minor, admitted allegations that he committed violations of Penal Code section 69[2] (obstructing or resisting an executive officer by means of threat or violence), a felony, and Vehicle Code section 10852 (tampering with a motor vehicle), a misdemeanor, and that he committed the former offense for the benefit of, at the direction of or in association with a criminal street gang, with the specific intent to promote, further or assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(A)).  Also pursuant to the negotiated disposition, the court dismissed two other felony allegations—street terrorism (§ 186.22, subd. (a)) and possession of a firearm in violation of condition of probation (§ 29815, subd. (a))—and the following five misdemeanor allegations: resisting an officer (§ 148, subd. (a)(1)), providing false identification information to an officer (§ 148.9, subd. (a)), possession of a deadly weapon with intent to assault (§ 17500), possession of live ammunition (§ 29650), and possession of burglary tools (§ 466).

At the disposition hearing on April 24, the court continued appellant as a ward of the court,[3] placed him under the supervision of the probation department for placement in the home of his mother, and ordered him committed to the Bear Creek Academy Youth Treatment Program.

---

[1]    All references to dates of events are to dates in 2012.

[2]    Except as otherwise indicated, all statutory references are to the Penal Code.

[3]    Appellant was initially adjudged a ward of the juvenile court in 2009, based on findings that he committed assault with a deadly weapon or by means of force likely to cause great bodily injury (§ 245, subd. (a)(1)), witness or victim intimidation by force or threat of force (§ 136.1, subd. (c)(1)), and possession of a weapon on school grounds (§ 626.10, subd. (a)).  He was readjudged a ward in 2011, based on his admissions of allegations of first degree burglary (§§ 459, 460, subd. (a)), with a gang enhancement (§ 186.22, subd. (b)(1)(B)), and resisting, delaying or obstructing a peace officer (§ 148, subd. (a)(1)).

Appellant's appointed appellate counsel has filed an opening brief which summarizes the pertinent facts, with citations to the record, raises no issues, and asks that this court independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Appellant has not responded to this court's invitation to submit additional briefing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Facts*[4]

On March 14, two City of Atwater police officers, while on patrol in a patrol vehicle, observed a car in which two of the five occupants were not wearing seat belts. The officers attempted to stop the car, but at the point the officer driving activated his lights and siren, the car accelerated and, with the officers in pursuit, reached speeds in excess of 80 miles per hour by the time it reached the outskirts of the city, before colliding with another vehicle stopped at a stop light. At that point, the occupants of the car got out and fled on foot. Police caught three of them, including appellant. Appellant initially gave the officers a false name. A search of the car revealed a loaded handgun on the floor near where appellant had been sitting.

On the night of March 3, police, responding to a report of an attempted car burglary, made contact with Roberto Sanchez, who told officers that upon being awakened by a noise outside his residence, he looked out the window and saw three persons, one of whom was in the cab of his (Sanchez's) vehicle. Sanchez further reported that he made a noise and the three persons fled. A short time later, at an in-field lineup, Sanchez indentified appellant as one of the persons he had seen.

---

[4] Our factual summary is taken from the report of the probation officer.

*Procedural Background*

Appellant entered his admissions on April 10. At the time of his admissions, he affirmed that he was not "promised … anything to get [him] to admit to these charges other than what we have said here," i.e., the dismissal of allegations as set forth above; he was not "threaten[ed] to get [him] to admit to the charges"; he was not "under the influence of any drugs, alcohol or … prescription medication"; and he had a "clear understanding of what [he was] doing[.]"

At the close of the April 24 disposition hearing, the probation officer informed the court—and defense counsel, Deputy Public Defender Richard Berger, confirmed—that appellant was refusing to "sign his orders." The court directed appellant to return to court on April 26 and "sign your orders."

On April 26, Berger informed the court that appellant "wants to withdraw his … admissions." After an off-the-record discussion, the court stated that there had been a discussion about "making a motion to allow [appellant] to withdraw his admission," and that it "seems appropriate … based on what I have heard so far that I appoint somebody other than Mr. Berger to do that." Out of concern that it not appoint the same attorney(s) representing appellant's co-defendant, the court continued the matter to May 2.

On May 2, at the outset of the proceeding, the court noted that in "conversations … in court" on April 26, appellant "indicated there were some issues with the admission and with certain things told to him or represented were told to him by [Berger]." The court ordered that Berger and the public defender's office were relieved as counsel for appellant, and appointed Leanna Rhodes, identified in the record as "Contract Public Defender," "to represent [appellant] to look into the possibility of filing a motion to withdraw the admission." The court set a hearing for May 9, to allow Rhodes to investigate the matter.

4

In court on May 9, Rhodes told the court that based on her review of the transcripts and her discussions with appellant, "I don't believe that there are grounds for him to withdraw his plea." She further stated the following: "It would appear that he's not someone that's new to the court system …. His representations to me that he didn't understand, … I don't believe that is true." She believed "the plea agreement[] was in [appellant's] best interest," and she had tried unsuccessfully to convince appellant of that. Appellant told Rhodes that Berger "promised him that he would get short-term," but "the record reflects that when asked whether there had been any promises made, [appellant] did say that there were none." There was "enough discussion about … [s]ection 69 in the transcripts, that [appellant's] representation that he didn't know what he was pleading to, again, I don't think is genuine."

Rhodes stated, "… the only thing that … concern[ed] [her was] whether there was a promise that was actually made by Mr. Berger." She told the court she had not discussed the matter with Berger. The court directed Rhodes to do so, and set a hearing date of May 11.

On May 11, Rhodes reported to the court that she had spoken with Berger and that he denied "that he had made any sort of promises to [appellant]." She stated that based on her review of the record and her discussions with appellant and Berger, "I do not believe that there are grounds for [appellant's] plea to be withdrawn."

At that point the court asked appellant if there was anything he "wanted to add." Appellant told the court the following: Berger "didn't explain to [appellant]" that under the then-proposed agreement, appellant would admit the section 69 allegation. "That wasn't part of the deal." Berger told appellant, "I'm sure that you're not going to do the youth treatment program again or long time." The "only reason" appellant "took the deal" was that Berger "said probably just short term probably be recommended."

5

The court stated, "I don't see any grounds for the withdrawal of the admission based on what I've seen," and again invited appellant to comment. Appellant stated, "… the only reason why I want to withdraw my admission because I admitted to a deal and then he gave me another deal that I didn't know I was going to be, didn't think that was going to be brought to me."

After further discussion in which appellant essentially repeated his claims and the court stated that it had read the transcript of the proceeding at which appellant entered his admissions and that it saw no grounds for appellant to withdraw his plea, appellant asked, "Is there any way I could get a new attorney?" He added, "That's what I wanted to ask for," and asked again, "Is there any way I could get my own lawyer or attorney?" The court explained appellant's right to appeal and told him that he could hire an attorney for an appeal, or appellate counsel would be appointed for him. Notwithstanding this explanation, there followed further discussion in which appellant asked, "But if I want to have my own lawyer?" The court responded, "You can have your own lawyer and he can appeal this in the Appellate Court. So you need to talk to him if that's what you want to do." There followed discussion of the filing of a notice of appeal and appellant's participation in the youth treatment program, after which appellant asked, "But how do I get my own lawyer[.]" The hearing concluded with the court's response: "You, I don't know. You talk to your mother or whatever and try to get a lawyer and they can put it on calendar whenever they need to."

## DISCUSSION

Following independent review of the record, we have concluded that no reasonably arguable legal or factual issues exist. That said, we note that an instance of harmless error occurred.

As indicated above, on May 2, the court relieved appellant's appointed counsel, Deputy Public Defender Richard Berger, and appointed attorney Leanna Rhodes as

6

appellant's counsel. However, the court made this appointment of substitute counsel without first conducting a hearing to determine whether appellant had shown that failure to do so would substantially impair his right to counsel. This was error. We base this conclusion on our Supreme Court's decisions in *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) and *People v. Sanchez* (2011) 53 Cal.4th 80 (*Sanchez*).

As the court explained in *Sanchez*, "In California, the 'seminal case regarding the appointment of substitute counsel is *Marsden*, *supra*, 2 Cal.3d 118, which gave birth to the term of art, a "*Marsden* motion."' [Citation.] [¶] ... [¶] We recognized [in *Marsden*] that 'criminal defendants are entitled under the Constitution to the assistance of court-appointed counsel if they are unable to employ private counsel.' [Citation.] We explained that 'the decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court,' that 'a defendant has no absolute right to more than one appointed attorney,' and that a trial court is not bound to accede to a request for substitute counsel unless the defendant makes a ""'sufficient showing … *that the right to the assistance of counsel would be substantially impaired*""' if the original attorney continued to represent the defendant. [Citation.]" (*Sanchez*, *supra*, 53 Cal.4th at pp. 86-87, italics added.)

In *Sanchez*, at the sentencing hearing, the defendant's deputy public defender told the trial court that the defendant "'wishe[d]'" to have the public defender "'explore having his plea withdrawn.'" (*Sanchez*, *supra*, 53 Cal.4th at p. 85.) The trial court asked if this was something counsel could do or whether it had to appoint "'conflict counsel.'" (*Ibid*.) Appointed counsel responded "'conflict counsel cannot be appointed'" until the trial court held a *Marsden* hearing and declared a conflict. (*Sanchez*, at p. 85.) At the next hearing, the trial court appointed "'conflict counsel for the sole purpose of looking into the motion to withdraw [defendant's] plea.'" (*Ibid*.) When "'conflict counsel'" reported that he found no basis for such a motion, the trial court confirmed the public

defender's continued representation of defendant and proceeded with sentencing. (*Id*. at p. 86.)

The Court of Appeal reversed, finding *Marsden* error. (*Sanchez*, *supra*, 53 Cal.4th at p. 86.) The Supreme Court affirmed the appellate court's judgment. (*Id*. at p. 93.) The court held that the trial court erred in multiple respects, including "by appointing substitute counsel without a sufficient showing that failure to appoint substitute counsel would substantially impair or deny defendant's right to assistance of counsel .…" (*Id*. at p. 92.)

The juvenile court here made the same error. The court appointed Rhodes as substitute counsel, but there is nothing in the record indicating that the court did so by determining that such appointment was "necessary under the *Marsden* standard," that is, the record does not show that the court determined "in the exercise of its discretion, … that [the accused] has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel." (*Sanchez*, *supra*, 53 Cal.4th at p. 89.) The record shows only that at the May 2 hearing at which the court appointed Rhodes, the court noted that in "conversations … in court" on April 26, appellant "indicated there were some issues with the admission and with certain things told to him or represented were told to him by [Deputy Public Defender Berger]," and that on April 26 Berger stated that appellant wanted to withdraw his admissions, an off-the-record discussion followed, and the court then indicated it would be "appropriate" to "appoint somebody other than Mr. Berger to" bring a motion to withdraw appellant's admission.

The court's error, however, was not prejudicial. The denial of a *Marsden* hearing is not reversible error if it is harmless beyond a reasonable doubt. (*People v. Chavez* (1980) 26 Cal.3d 334, 348.) "[A] trial court's failure to conduct a postconviction *Marsden* hearing is harmless where the defendant 'has made no showing … either that

8

his *Marsden* motion would have been granted had it been heard, or that a more favorable result would have been achieved had the motion … been granted.'" (*People v. Reed* (2010) 183 Cal.App.4th 1137, 1148.)

Here, although the court failed to conduct a *Marsden* hearing on May 2, upon appointing Rhodes, later, on May 11, the court gave appellant ample opportunity to state his complaints about Berger. The court heard appellant's complaints about Berger and Berger's response to those claims, as relayed by Rhodes. The record supports the juvenile court's conclusion that appellant's complaints were without merit and that appellant's admissions were knowing and voluntary. The court's error in failing to conduct a *Marsden* hearing earlier was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.