Filed 7/15/14  P. v. Madruga CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064054 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD243107) |
| MONICA LEE MADRUGA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.

Law Offices of Michael Clough and Michael Clough for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Sabrina Lane-Erwin and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

Pursuant to a negotiated plea agreement, Monica Lee Madruga, a recidivist drug offender, pleaded guilty to two drug-related charges, admitted the truth of various sentence enhancement allegations, and was sentenced to a stipulated eight-year sentence

involving four years of local incarceration followed by four years of mandatory supervision.

On appeal, Madruga challenges the trial court's order denying her postplea, presentence motion to replace her court-appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). We conclude she has failed to meet her burden of showing her counsel was providing inadequate representation or that she and counsel had become embroiled in such an irreconcilable conflict that ineffective representation was likely to result. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual background*[1]

One evening in early September 2012, police officers in a patrol car observed a car stopped in the middle of the road for about seven to 10 seconds at an intersection in San Diego. The officers conducted a traffic stop and spoke to Madruga, who was driving the car. Madruga, who was mumbling very rapidly and was fidgeting, stated she was lost. Noticing that she seemed to be under the influence of a controlled substance, the officers administered a field sobriety test and arrested her for being under the influence of a controlled substance. Madruga later provided a urine sample, which tested positive for the presence of methamphetamine and amphetamine.

---

[1] As the parties acknowledge the pertinent underlying facts are uncontested, and Madruga pleaded guilty before the trial was held, the following factual background is taken from the probation report and the prosecutor's trial brief.

During a search incident to Madruga's arrest, officers found in her purse a large clear plastic bag containing four smaller bags, all of which contained a crystalline substance later determined to be a total of 17.90 grams of methamphetamine. The officers also found inside her purse a glass pipe, $541 in cash, and a cell phone. After she waived her *Miranda*[2] rights, Madruga stated during a police interview that she had purchased an ounce of methamphetamine for $900.

2. *Procedural background*

In late 2012 the San Diego County District Attorney filed a four-count information charging Madruga with (1) transportation of a controlled substance (methamphetamine) (count 1: Health & Saf. Code, § 11379, subd. (a)); (2) possession for sale of methamphetamine (count 2: Health & Saf. Code, § 11378); (3) using and being under the influence of methamphetamine (count 3: Health & Saf. Code, § 11550, subd. (a)); and (4) driving under the influence of drugs (count 4: Veh. Code, § 23152, subd. (a)).

As to count 1, the information alleged that Madruga's transportation of methamphetamine was not for personal use within the meaning of Penal Code section 1210, subdivision (a). As to counts 1 and 2, the information also alleged that Madruga had suffered three prior convictions of transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)) within the meaning of Health and Safety Code section 11370.2, subdivision (c). The information further alleged under Penal Code section 1203, subdivision (e)(4), that Madruga was presumptively ineligible for probation

---

2  *Miranda v. Arizona* (1966) 384 U.S. 436.

because she had suffered seven specified prior felony convictions and that she had three prison priors (Pen. Code, § 667.5, subd. (b)).

a. *Guilty Plea*

On the date set for trial in this matter, Madruga—who was represented by Deputy Public Defender Abbey Noel—pleaded guilty to count 1 (transportation of methamphetamine) and count 4 (driving under the influence of drugs) pursuant to a negotiated plea agreement. She admitted the count 1 allegation that the methamphetamine she transported was not for personal use, and she also admitted she had suffered two prior drug-offense convictions within the meaning of Health and Safety Code section 11370.2, subdivision (c). Under the terms of the plea agreement, Madruga agreed she would receive a stipulated eight-year sentence involving four years of local incarceration followed by four years of mandatory supervision.

b. *Marsden motion and sentencing*

At the sentencing hearing, Madruga orally made a *Marsden* motion to replace her court-appointed counsel. After conducting a *Marsden* hearing (discussed more fully, *post*), the court denied Madruga's motion.

In accordance with the plea agreement, the court then sentenced Madruga under Penal Code section 1170, subdivision (h), to the stipulated term of eight years in local custody, four years of which the court ordered her to serve in actual custody, and the remaining four years of which it ordered her to serve under mandatory supervision following her release from custody. This appeal from the order denying Madruga's *Marsden* motion followed.

4

DISCUSSION

Madruga contends the court abused its discretion in denying her *Marsden* motion. We reject this contention.

A. *Background*:  *Sentencing/Marsden Motion Hearing*

At the sentencing hearing, Madruga was represented by Deputy Public Defender Rohanee Zapanta, who was specially appearing on behalf of Deputy Public Defender Noel, who had represented Madruga at the change of plea hearing. After the court indicated it was going to impose the stipulated sentence that Madruga had bargained for when she entered her guilty plea, the proceeding was briefly interrupted when Zapanta, with the court's permission, spoke with Madruga off the record after Zapanta apologized to the court for the interruption.

Zapanta then told the court Madruga had just informed her she had spoken to another attorney who had advised Madruga she had grounds for a continuance. Zapanta explained that she had met with Madruga several times prior to the sentencing hearing and had told her she (Zapanta) had reviewed the file and had determined there were no legal grounds for a continuance because Madruga had stipulated to the sentence. The court reminded Madruga it had accepted her guilty plea, it had "made it clear what the deal was," and she had taken the "deal."

Madruga acknowledged she took the plea deal, but said she was "scared to death of going into a trial." She then claimed she had not spent time with her attorney (Noel) and "things" were not explained to her. She said she suffered from anxiety and

5

depression and as a result she got so scared that she did not want to proceed further at that point.

Madruga also told the court that some of her needs were "not being met by [her] plea," and she wanted a continuance to "figure things out." She indicated she was afraid of committing more crimes if she did not get help.

The court responded that this is what it had encountered over the years from people like Madruga who have substance abuse problems and get "buyer's remorse" after thinking about why they entered their plea. The court told Madruga, "You are trying to delay things more because that is part of the nature of drug addiction." The court then stated:

> "[W]e explained this very thoroughly to you when we took your plea. I think you understood it. I think you made a knowing, intelligent waiver. . . . I don't think there is anything about the proceeding that we went through that we did [that] you did not understand. You were coherent and lucid. You responded to questions properly."

Noting that she may have turned down a better deal before she entered her plea, the court explained to Madruga, "[W]hat happens in the court system is that you usually get your best offer early on," and "when you get to the steps of the trial court, then the offer is not as good." The court then denied Madruga's request for a continuance, stating, "That's not . . . grounds for continuance. That's not . . . grounds for withdrawing your plea."

1. *Marsden motion and hearing*

Immediately thereafter, Madruga orally made her *Marsden* motion, stating, "How about a *Marsden* hearing for ineffective counsel?" The court asked her whether the motion was against Noel or Zapanta, and Madruga replied it was "probably" against the public defender's office. The court cleared the courtroom of everyone except Madruga, Zapanta, and the court staff, and then conducted a hearing on Madruga's motion.

At the *Marsden* hearing, Zapanta explained she had been assigned the case three or four weeks earlier for the purpose of representing Madruga at sentencing. Informing the court she went over the case with Madruga in detail, Zapanta indicated she had explained the stipulated sentence to Madruga at least three times. Zapanta informed the court she had retrieved and provided to the court information that Madruga requested, and she had spoken to Mr. Warren as Madruga requested.[3] Zapanta told the court Madruga had been properly advised and the defense was ready to proceed with sentencing.

Madruga asked whether the court had been provided her two "psych" evaluations, which she indicated were prepared in Arizona in 2007 and in late 2008 or 2009. The court indicated it did not have those and would not have access to them if they were from Arizona. Madruga stated that in two prior cases she was not "sentenced to treatment or help." She told the court she felt that her plea deal was horrible and she should be spending her time getting help.

---

3      Although the record is unclear about who Mr. Warren is, it appears he was the attorney with whom Madruga consulted.

7

The court began reviewing Madruga's criminal record to ascertain when the evaluations were done. Noting that a psych evaluation indicated she was drug dependent, the court asked Madruga, "What does it say?" Madruga responded that she had "depression and P.T.S.D." Because her mother had depression, her mother did not talk to her, and she would lock Madruga out of the house. Madruga stated she eventually went to a foster home, but ran away after her foster father drugged and sexually molested her. She explained that as a result of her trauma, she has a difficult time coping and "stay[ing] on track," her mind will "race ahead," and her emotions sometimes "drop." She stated that although she "signed [the] plea," she was hoping to be able to get help.

Acknowledging that Deputy Public Defender Noel explained the terms of the plea agreement to her, Madruga told the court she "thought [she] would be able to get help at the same time." The court explained to Madruga that during her four years of local supervision, she would be evaluated and her probation officer would get her into programs she needed to be in.

Madruga complained she was "going to do all of this time" and then said, "I don't even know what I was thinking. I was hoping. I was praying. *I didn't understand*." (Italics added.)

The court explained to Madruga she was going to serve two years in local custody less credit for time served, and once she was on supervision she would be "appoint[ed]" to a program if she needed one. The court then told Madruga, "What I'm hearing from you is that you . . . understood the deal, but you were hoping for something better, but that's not what was being offered." Madruga replied, "I don't know."

8

The court then asked Madruga whether Noel told her she was *not* going to get out of custody and be placed in a program. Madruga replied, "Okay. She didn't tell me that I was, but of course we hear a lot of different things at the jail about—" The court interrupted her and said it only cared about what Noel told her or did not tell her. Madruga responded, "I asked her to please pull those psych evals and not take a deal if she didn't look at the psych evals. That's what I told her." Indicating she believed Noel did not do so, Madruga stated that Noel told her that someone said they would not be pertinent to her case because "they were done before." She added that she continued to tell Noel she needed help. The court responded, "No one is denying that you need help." Madruga then told the court, "I don't want to go through this anymore. I keep throwing my life away." The court replied:

> "That's right. So what this deal contemplated is you are going to do some time in custody because—to make the point that you don't want to be doing this anymore—you will be in jail. . . . [A]nd you will have four years [of] mandatory supervision to make sure you stay on track when you are out of custody."

Zapanta then informed the court she had looked into the reports and made sure that Noel looked at them as well. Zapanta explained that one of Madruga's previous public defenders[4] had the psychological evaluations and used them in a previous case. Zapanta informed the court that the public defender told her the information was "dated" because it was from years ago. Zapanta also stated she told Madruga she had looked into the evaluations, but they would not be used at the sentencing hearing in this case.

---

4    Monique Carter.

The court then told Madruga she had not said anything that would indicate she had been coerced into taking the deal or that her will was overborne. When the court asked her whether there was anything else she wanted to say, Madruga continued to argue her attorney was not looking out for her best interest by recognizing her cycles and getting her help.

The court explained to Madruga that the public defender does not have full control over the process and told her the district attorney and, to a lesser degree, the court also have input in the plea bargain. The court noted that almost everyone who has appeared before the court has had a troubled past. The court also explained that "usually the more history you have, the worse the deal is." The court reminded Madruga she had "done a fair amount of time in the past," she already had "three sales priors" and several prison priors, and her sentence "would have been substantially longer if [she] had gone to trial and lost." The court also explained to Madruga that once a case is assigned to a trial department, "you [typically] don't get any deal," and the only option is to "plead to the sheet." The court noted that Noel was able to persuade the prosecutor to accept a negotiation so that Madruga did not have to "plead to all the other charges and all the other allegations."

The court concluded by saying, "[A]gain, I don't think there's anything that you told me that makes me think that . . . Ms. Noel didn't advise you; [or] that [she] didn't work hard on your behalf; [or] that you didn't understand what was going on when you took this deal."

However, the court permitted Madruga to speak again about her case and about getting help. Madruga suggested there was no evidence to show she was attempting to sell the methamphetamine found in her purse. The court responded that she was "charged with transportation not for personal use," and all the experts it had ever heard testified that 17 grams of methamphetamine is not for personal use and is a sellable amount.

The court then denied Madruga's *Marsden* motion, finding she had not said anything that would warrant appointment of new counsel, and she had not received ineffective assistance of counsel. The court then proceeded to sentence Madruga.

B. *Applicable Legal Principles*

The Sixth Amendment right to the assistance of counsel encompasses a defendant's right to discharge his appointed counsel and substitute another attorney when the record shows the first appointed attorney is not providing adequate representation or when the defendant and the first appointed attorney "have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*People v. Memro* (1995) 11 Cal.4th 786, 857.)

A defendant has no absolute right to substitute a new appointed attorney for his or her prior appointed attorney, and a trial court is not bound to grant a request for substitute counsel "unless the defendant makes a ' " 'sufficient showing . . . that the right to the assistance of counsel would be substantially impaired' " ' " if the prior appointed attorney continued to represent the defendant. (*People v. Sanchez* (2011) 53 Cal.4th 80, 87 (*Sanchez*), citing *Marsden*, *supra*, 2 Cal.3d at p. 123.)

11

When a trial court learns that a defendant seeks to discharge appointed counsel and substitute another attorney based on inadequate representation, the court must hold a hearing on the so-called "*Marsden* motion" to permit the defendant to explain the basis of his or her contention and to relate specific instances of the attorney's inadequate performance to allow the court to decide whether to grant the defendant's request. (*Sanchez, supra*, 53 Cal.4th at p. 87.)  However, a showing of mere lack of trust in, or inability to get along with, an appointed attorney is an inadequate basis for appointing new counsel.  (*People v. Clark* (2011) 52 Cal.4th 856, 918.)

The standards for evaluating a postconviction *Marsden* motion are the same as the standards for evaluating a preconviction *Marsden* motion.  (*People v. Smith* (1993) 6 Cal.4th 684, 695-696.)

1. *Standard of review*

We review a trial court's decision to deny a *Marsden* motion under the deferential abuse of discretion standard.  (*People v. Earp* (1999) 20 Cal.4th 826, 876.)  " 'Denial of [a *Marsden*] motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would substantially impair the defendant's right to assistance of counsel.' "  (*People v. Hart* (1999) 20 Cal.4th 546, 603.)

C. *Analysis*

Requesting that her convictions and stipulated sentence be set aside, and that the case be remanded for further proceedings following appointment of new counsel, Madruga contends the court's denial of her *Marsden* motion was an abuse of discretion for three reasons.

1. *Claimed conflict between Deputy Public Defender Zapanta and Madruga*

Madruga first contends the denial of her motion was erroneous because Deputy Public Defender Zapanta─who (as discussed, *ante*) appeared for Deputy Public Defender Noel and represented Madruga at the sentencing hearing─"took a position directly adverse to Madruga's preferences and interest" by not supporting her request to continue the sentencing hearing, which created a direct conflict that substantially impaired her right to effective representation in that post-plea proceeding. Madruga's contention is unavailing.

As already discussed, Zapanta informed the court at the beginning of the sentencing proceeding that she had met with Madruga several times prior to the hearing, and she had explained to Madruga that she (Zapanta) had reviewed the file and had determined there were no legal grounds for a continuance because Madruga had stipulated to the sentence when she entered her plea.

Madruga suggests that Zapanta violated her duty of loyalty to Madruga by failing to support her request for a continuance and that her failure to do what Madruga wanted her to do resulted in a direct conflict that directly and substantially impaired Madruga's right to effective representation during sentencing. However, the California Supreme Court has explained that "[t]here is no constitutional right to an attorney who would conduct the defense of the case in accord with the whims of an indigent defendant," and a "disagreement between defendant and appointed counsel concerning trial tactics [does not] necessarily compel the appointment of another attorney." (*People v. Lucky* (1988) 45 Cal.3d 259, 281-282.)

13

Here, Zapanta's professional decision to not support Madruga's request for a continuance constituted a disagreement between Madruga and appointed counsel concerning trial tactics that did not necessarily compel the appointment of another attorney. (*People v. Lucky*, *supra*, 45 Cal.3d at pp. 281-282.)

Furthermore, the record supports the court's finding—after Madruga said she wanted a continuance of the sentencing hearing to "figure things out"—that there was no good cause for granting a continuance because Madruga's desire to delay sentencing was a case of buyer's remorse. Reminding Madruga that it had taken her plea, the court explained to Madruga it believed she had understood the thoroughly-explained plea agreement, she was "coherent and lucid" during the change-of-plea hearing, and she "made a knowing, intelligent waiver" of her rights. Our review of the reporter's transcript of the change-of-plea hearing discloses that the record fully supports the court's findings.

We note the reporter's transcripts of both the open session and the *Marsden* hearing show Madruga did not claim she did not understand the plea agreement until after the court indicated it was going to impose the stipulated sentence she had bargained for when she entered her plea, after she acknowledged she took the deal and stated she was scared to death of going into a trial, after she told the court she felt that her plea deal was horrible, after the court again indicated it was going to impose the stipulated sentence, and after she complained she was "going to do all of this time."

2. *Absence of Deputy Public Defender Noel*

Madruga also contends the court abused its discretion in denying her *Marsden* motion because Deputy Public Defender Noel, who represented her at the change-of-plea

14

hearing, should have been present during the *Marsden* hearing to provide information about Madruga's mental state during the change-of-plea hearing. This contention is also unavailing.

Madruga's principal argument is that Noel was the "only witness" who "was in a position to provide the court with information regarding Madruga's emotional and psychological state at the time she entered into the plea." Madruga further asserts that, "in the absence of representations by Noel, the court *lacked any basis* to determine that Madruga's decision to sign the plea agreement was not the result of a psychological disorder or extreme emotional distress." (Italics added.)

As already discussed, however, the court had presided over the change-of-plea proceeding and had spoken directly to Madruga during the change-of-plea colloquy. The record of that proceeding shows the court was fully satisfied Madruga understood the terms of the plea agreement, and she made a knowing and intelligent waiver of her rights before she entered her plea and accepted the stipulated sentence. The court's personal interaction with Madruga during the change-of-plea proceeding provided a proper basis for its determination during the later *Marsden* proceeding that Madruga's decision to sign the plea agreement was not the result of a psychological disorder or extreme emotional distress.

Furthermore, the law requires that a hearing be held on a defendant's *Marsden* motion "'to give *defendant* an opportunity to state fully the grounds for his [or her] dissatisfaction with appointed counsel.'" (*Sanchez, supra,* 53 Cal.4th at p. 87, italics added, quoting *People v. Lucky, supra,* 45 Cal.3d at p. 280.) Indeed, when a trial court

15

inquires and permits the defendant to state the grounds for his or her *Marsden* motion, the court's duty of inquiry is satisfied. (*People v. Silva* (2001) 25 Cal.4th 345, 367.) Madruga cites no authority, and we are aware of none, to support her claim that the court abused its discretion by holding the *Marsden* hearing without having Noel present and available to be questioned. We reject this claim of error and conclude the court satisfied its duty of inquiry by conducting the *Marsden* hearing without the presence of Noel and by permitting Madruga to state the reasons for her dissatisfaction with appointed counsel. (*Sanchez*, at p. 87; *Silva*, at p. 367.)

3. *Counsel's alleged failure to properly investigate psychological issues*

Last, Madruga contends the court abused its discretion in denying her *Marsden* motion because Noel failed to "competently investigate [her] psychological issues" and recognize that she was "incapable of entering a knowing and voluntary plea" as a result of her mental state at the time she entered her plea. A fair interpretation of Madruga's statements during the *Marsden* hearing is that she wanted both a continuance of the sentencing proceeding and the appointment of new counsel in order to bring a postplea motion to withdraw her plea because she wanted help instead of incarceration. We have already concluded, however, that the record fully supports the court's findings that the terms of the plea agreement had been thoroughly explained to Madruga, she understood the provisions of that agreement, she was coherent and lucid during the change-of-plea hearing, and she knowingly and intelligently waived her constitutional rights. We conclude the record supports the court's determination that there was no basis for entertaining a motion to withdraw Madruga's plea.

16

For all of the foregoing reasons, we conclude Madruga has failed to meet her burden of showing that her appointed counsel provided inadequate representation or that she and counsel had become embroiled in such an irreconcilable conflict that ineffective representation was likely to result.  (*People v. Memro*, *supra*, 11 Cal.4th at p. 857.)  Accordingly, we affirm the order denying Madruga's *Marsden* motion.

## DISPOSITION

The order denying Madruga's *Marsden* motion is affirmed.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.

17